# UNITED STATES *v.* REGAN.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 503.   Argued October 22, 1913.—Decided January 5, 1914.

While in strictly criminal prosecutions the jury may not return a verdict against the defendant unless the evidence establishes his guilt beyond a reasonable doubt, in civil actions it is the duty of the jury to resolve the issues of fact according to the reasonable preponderance of the evidence, and this although they may involve a penalized or criminal act.

In an action brought by the United States under § 5 of the Alien Immigration Act of February 20, 1907, c. 1134, 34 Stat. 898, to recover the prescribed pecuniary penalty for an alleged violation of § 4 of the act, it is not essential to a recovery by the Government that the evidence establish the violation beyond a reasonable doubt, as in a criminal case, but a reasonable preponderance of proof is sufficient.

203 Fed. Rep. 433, reversed.

THE facts, which involve the construction of the penalty provisions of the Alien Immigration Act of 1907, are stated in the opinion.

*Mr. Assistant Attorney General Denison*, with whom *Mr. Assistant Attorney General Harr* was on the brief, for the United States:

The rule as to proof beyond a reasonable doubt in criminal prosecutions has no application to civil suits to recover penalties or forfeitures. *St. Louis Ry. Co.* v. *United States*, 183 Fed. Rep. 770; *Norfolk & Western Ry. Co.* v. *United States*, 191 Fed. Rep. 302, 308; *N. Y. Cent. & H. R. R. R. Co.* v. *United States*, 165 Fed. Rep. 833; *Atch., Top. &c. Ry. Co.* v. *United States*, 178 Fed. Rep. 12; *Mo., Kan. &c. Ry. Co.* v. *United States*, 178 Fed. Rep. 15; *United States* v. *Wabash Ry. Co.*, 182 Fed. Rep. 802; *Mont. Cent. Ry. Co.* v. *United States*, 164 Fed. Rep. 400; *United States* v. *Brown*, 24 Fed. Cas. No. 14,662; *Hawloetz* v. *Kass*, 25 Fed. Rep. 765; *United States* v. *Cent. of Ga. Ry. Co.*, 157 Fed. Rep. 893; *United States* v. *Phila. & Reading Ry. Co.*, 160 Fed. Rep. 696; *United States* v. *Louis. & Nash. R. R. Co.*, 162 Fed. Rep. 185; *United States* v. *Penna. R. R. Co.*, 162 Fed. Rep. 408; *United States* v. *Chicago G. W. Ry. Co.*, 162 Fed. Rep. 775; *United States* v. *Nevada County R. R. Co.*, 167 Fed. Rep. 695; *United States* v. *Boston & Maine R. R. Co.*, 168 Fed. Rep. 148; *United States* v. *Balt. & Ohio R. R. Co.*, 170 Fed. Rep. 456; *United States* v. *Southern Ry. Co.*, 170 Fed. Rep. 1014; *United States* v. *Chi., R. I. & Pac. Ry. Co.*, 173 Fed. Rep. 684; *United States* v. *Southern Pacific Co.*, 157 Fed. Rep. 459; *United States* v. *Southern Pacific Co.*, 162 Fed. Rep. 412.

No authoritative Federal decisions support the court below, *United States* v. *Ill. Cent. R. Co.*, 156 Fed. Rep. 182, having been reversed by the Court of Appeals, 170 Fed. Rep. 542; also overruling *United States* v. *Louis. & Nash. R. Co.*, 157 Fed. Rep. 979; *United States* v. *Shapleigh*, 54 Fed. Rep. 126.

All the state court decisions are in accord, except *Riker* v. *Hooper*, 35 Vermont, 457, and *L. & N. R. R. Co.* v. *Commonwealth*, 112 Kentucky, 635, but see *Ins. Co.* v.

*Johnson,* 11 Bush, 593.   For cases taking a middle ground, holding on the one hand that proof beyond reasonable doubt is not necessary, but on the other that a mere, or "very slight, preponderance" is not sufficient, see *Toledo &c. Ry. Co.* v. *Foster,* 43 Illinois, 480; *Ruth* v. *City,* 80 Illinois, 418; *A., T. & S. F. Ry. Co.* v. *People,* 227 Illinois, 270; *Palmer* v. *People,* 109 Ill. App. 269.

As to *Glenwood* v. *Roberts,* 59 Mo. App. 167, see *State* v. *K. C. &c. R. R.,* 70 Mo. App. 643.

For state court decisions on this precise point see *Louis. & Nash. R. R. Co.* v. *Hill,* 115 Alabama, 334, 352; *Munson* v. *Atwood,* 30 Connecticut, 102; *Webster* v. *People,* 14 Illinois, 365, 367; *State* v. *Chi., Mil. & St. P. Ry. Co.,* 122 Iowa, 22; *Roberge* v. *Burnham,* 124 Massachusetts, 277; *O'Connell* v. *O'Leary,* 145 Massachusetts, 311; *Ellis* v. *Buzzell,* 60 Maine, 209; *Campbell* v. *Burns,* 94 Maine, 127; *Essex* v. *Kansas City &c. R. R. Co.,* 70 Mo. App. 634; *Hitchcock* v. *Munger,* 15 N. H. 97; *People* v. *Briggs,* 114 N. Y. 56, 64, 65; *De Veaux* v. *Clemens,* 17 Ohio C. C. 33; *Sparta* v. *Lewis,* 91 Tennessee, 370; *Houston & Tex. Cent. R. R. Co.* v. *State,* 103 S. W. Rep. 449; 4 Wigmore on Evidence, § 2498.

*Mr. David L. Podell,* with whom *Mr. Max D. Steuer* was on the brief, for respondent:

By the provision of the statute (§ 4) its violation is made a misdemeanor.   In order to recover the penalty provided thereby the violation must be proved beyond a reasonable doubt.   *Boyd* v. *United States,* 116 U. S. 616; *Chaffee* v. *United States,* 18 Wall. 516; *Hepner* v. *United States,* 213 U. S. 103; *Lees* v. *United States,* 150 U. S. 476; *Lilienthal* v. *United States,* 97 U. S. 237; *Oceanic Steam Nav. Co.* v. *Stranahan,* 214 U. S. 320; *Regan* v. *United States,* 183 Fed. Rep. 293; *Schick* v. *United States,* 195 U. S. 65; *United States* v. *Stevenson,* 215 U. S. 190; *United States* v. *The Burdett,* 9 Peters, 682.

Mr. Justice Van Devanter delivered the opinion of the court.

This was an action of debt prosecuted by the United States, under § 5 of the act of February 20, 1907, c. 1134, 34 Stat. 898, 900, known as the Alien Immigration Act, to recover $1,000 as a penalty for an alleged violation by the defendant of § 4 of that act; and the question now to be considered is, whether it was essential to a recovery that the evidence should establish the violation beyond a reasonable doubt. The District Court instructed the jury that this measure of proof was required, and the instruction was approved by the Circuit Court of Appeals. 183 Fed. Rep. 293; 203 Fed. Rep. 433. The two sections are as follows:

"Sec. 4. That it shall be a misdemeanor for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any way to assist or encourage the importation or migration of any contract laborer or contract laborers into the United States, unless such contract laborer or contract laborers are exempted under the terms of the last two provisos contained in section two of this Act.

"Sec. 5. That for every violation of any of the provisions of section four of this Act the persons, partnership, company, or corporation violating the same, by knowingly assisting, encouraging, or soliciting the migration or importation of any contract laborer into the United States shall forfeit and pay for every such offense the sum of one thousand dollars, which may be sued for and recovered by the United States, or by any person who shall first bring his action therefor in his own name and for his own benefit, including any such alien thus promised labor or service of any kind as aforesaid, as debts of like amount are now recovered in the courts of the United States; and separate suits may be brought for each alien thus promised

labor or service of any kind as aforesaid. And it shall be the duty of the district attorney of the proper district to prosecute every such suit when brought by the United States."

These sections are largely copied from the like-numbered sections of the act of March 3, 1903, c. 1012, 32 Stat. 1213, the words "shall be unlawful" in § 4 being changed to "shall be a misdemeanor," and the words "shall forfeit and pay for every such offense" in § 5, with what follows them, remaining as before.

Whether cases like this are civil or criminal and whether they are attended by the incidents of the one or the other have been so often considered by this court that our present duty, as we shall see, is chiefly that of applying settled rules of decision.

In *Stockwell* v. *United States,* 13 Wall. 531, the question arose, whether the United States could maintain a civil action of debt to recover a penalty incurred under the act of March 3, 1823, c. 58, 3 Stat. 781, providing that any person receiving, concealing or buying merchandise, knowing that it was illegally imported and subject to seizure, should, "on conviction thereof," forfeit and pay double the value of the merchandise, there being also a provision that the penalty might be "sued for and recovered," in the name of the United States, in any court of competent jurisdiction; and this court held that the civil action was maintainable, saying (p. 542): "But it is insisted that when the government proceeds for a penalty based on an offense against law, it must be by indictment or by information. No authority has been adduced in support of this position, and it is believed that none exists. It cannot be that whether an action of debt is maintainable or not depends upon the question who is the plaintiff. Debt lies whenever a sum certain is due to the plaintiff; or a sum which can readily be reduced to a certainty—a sum requiring no future valuation to settle its amount.

It is not necessarily founded upon contract. It is immaterial in what manner the obligation was incurred, or by what it is evidenced, if the sum owing is capable of being definitely ascertained." And again (p. 543): "The expression 'sued for and recovered' is primarily applicable to civil actions, and not to those of a criminal nature."

In *United States* v. *Zucker*, 161 U. S. 475, the Government by an action of debt sought to recover, as a penalty, the value of imported merchandise the entry of which had been fraudulently secured in violation of § 9 of the act of June 10, 1890, c. 407, .26 Stat. 131, 135, which subjected one committing that offense to a forfeiture of the merchandise, or its value, and to a fine and imprisonment. At the trial the United States sought to read in evidence the deposition of an absent witness theretofore taken in the cause, but the deposition was excluded upon the theory that the case, though civil in form, was in substance criminal, and therefore that the defendants were entitled, under the Sixth Amendment to the Constitution, to be confronted with the witnesses against them. This resulted in a judgment for the defendants, and when the case came here this court pronounced the trial court's theory untenable, sustained the Government's right to read the deposition, and reversed the judgment, saying (p. 481): "A witness who proves facts entitling the plaintiff in a proceeding in a court of the United States, even if the plaintiff be the Government, to a judgment for money only, and not to a judgment which directly involves the personal safety of the defendant, is not, within the meaning of the Sixth Amendment, a witness against an 'accused' in a criminal prosecution; and his evidence may be brought before the jury, in the form of a deposition, taken as prescribed by the statutes regulating the mode in which depositions to be used in the courts of the United States may be taken. The defendant, in such a case, is no more entitled to be confronted at the trial with the witnesses

of the plaintiff than he would be in a case where the evidence related to a claim for money that could be established without disclosing any facts tending to show the commission of crime."

In *Hepner* v. *United States*, 213 U. S. 103, the Government had brought an action of debt, under § 5 of the Alien Immigration Act of 1903, 32 Stat. 1213, 1214, to recover the penalty prescribed for a violation of § 4 of that act—they being the sections from which those now under consideration are largely copied—and in the progress of the cause it became necessary for this court to consider whether a verdict for the Government could be directed under the rule applicable in civil actions. Upon an extended review of the cases bearing upon the subject, including *Atcheson* v. *Everitt*, 1 Cowp. 382, the question was answered in the affirmative, and it was said:

(p. 108) "It must be taken as settled law that a certain sum, or a sum which can readily be reduced to a certainty, prescribed in a statute as a penalty for the violation of law, may be recovered by civil action, even if it may also be recovered in a proceeding which is technically criminal. Of course, if the statute by which the penalty was imposed contemplated recovery only by a criminal proceeding, a civil remedy could not be adopted. *United States* v. *Claflin*, 97 U. S. 546. But there can be no doubt that the words of the statute on which the present suit is based are broad enough to embrace, and were intended to embrace, a civil action to recover the prescribed penalty. It provides that the penalty of one thousand dollars may be 'sued for' and recovered by the United States or by any 'person' who shall first begin his 'action' therefor 'in his own name and for his own benefit,' 'as debts of like amount are now recovered in the courts of the United States;' and 'separate suits' may be brought for each alien thus promised labor or service of any kind. The district attorney is required to prosecute every such

'suit' when brought by the United States. These references in the statute to the proceeding for recovering the penalty plainly indicate that a civil action is an appropriate mode of proceeding.

\*     \*     \*     \*     \*     \*     \*     \*

(p. 111) "But the decision in the *Zucker* case is important in that it recognizes the right of the Government, by a civil action of debt, to recover a statutory penalty, although such penalty arises from the commission of a public offense. It is important also in that it decides that an action of that kind is not of such a criminal nature as to preclude the Government from establishing, according to the practice in strictly civil cases, its right to a judgment by depositions taken in the usual form, without confronting the defendant with the witnesses against him.

\*     \*     \*     \*     \*     \*     \*     \*

(p. 115) "The defendant was, of course, entitled to have a jury summoned in this case, but that right was subject to the condition, fundamental in the conduct of civil actions, that the court may withdraw a case from the jury and direct a verdict, according to the law, if the evidence is uncontradicted and raises only a question of law."

In *Atcheson* v. *Everitt*, approvingly cited in that case, the question for decision was, whether certain testimony, admissible by statute in civil but not in criminal causes, could be received in an action of debt for the pecuniary penalty for bribery at an election of a Member of Parliament, an act not merely prohibited but indictable as a crime. Notwithstanding the defendant's insistent objection, the testimony was held to be rightly receivable, it being said by Lord Mansfield, who spoke for the entire court (1. Cowp. 391): "Penal actions were never yet put under the head of criminal law, or crimes. The construction of the statute must be extended by equity to make this a criminal case. It is as much a civil action, as an action for money had and received."

In *Wilson* v. *Rastall*, 4 D. & E. 753, 758, also approvingly cited in the *Hepner Case*, one of the questions was, whether, .after a verdict for the defendant, a new trial could be granted, upon the plaintiff's motion, in an action of debt for the pecuniary penalty for bribing voters, an indictable crime, and the court gave an affirmative answer and awarded a new trial, Lord Kenyon, Ch. J., observing: "All the cases of indictments I lay out of the case, because they are criminal cases, and are exceptions to the general rule. But I consider this as a civil action."

In *United States* v. *Stevenson*, 215 U. S. 190, which was a prosecution by indictment for a violation of § 4 of the present Alien Immigration Act, the question for decision was, whether that mode of enforcing the penalty was admissible in view of the provisions of § 5 permitting a civil action. It was held that an indictment would lie, and in the course of the opinion, after observing that in the absence of some provision to the contrary a statutory penalty may be recovered by either a criminal prosecution or a civil action of debt, it was said (p. 198): "It is to be noted that this statute (§ 5 of the Immigration Act) does not in terms undertake to make an action for the penalty an exclusive means of enforcing it, and only provides that it may be thus sued for and recovered. There is nothing in the terms of the act specifically undertaking to restrict the Government to this method of enforcing the law. It is not to be presumed, in the absence of language clearly indicating the contrary intention, that it was the purpose of Congress to take from the Government the well-recognized method of enforcing such a statute by indictment and criminal proceedings." And then, after commenting upon the change in § 4 whereby the words "shall be unlawful" were replaced by "shall be a misdemeanor," and observing that the only purpose in this was to make clear the right of the Government to prosecute as for a crime, it was further said (p. 199): "Congress having

declared the acts in question to constitute a misdemeanor, and having provided that an action for a penalty may be prosecuted, we think there is nothing in the terms of the statute which will cut down the right of the Government to prosecute by indictment if it shall choose to resort to that method of seeking to punish an alleged offender against the statute. Nor does this conclusion take away any of the substantial rights of the citizen. He is entitled [meaning in a prosecution by indictment] to the constitutional protection which requires the Government to produce the witnesses against him, and no verdict against him can be directed, as might be the case in a civil action for the penalty. *Hepner* v. *United States*, 213 U. S. 103."

The latest case in this court bearing upon the subject is *Chicago, Burlington & Quincy Railway Co.* v. *United States*, 220 U. S. 559, which was an action to recover penalties incurred by the violation of the Safety Appliance Acts of Congress. In the trial court the Government prevailed; and when the judgment came here for review the railway company contended that the action was in effect a criminal prosecution and in consequence not controlled by the prior decision in *St. Louis, Iron Mt. & Southern Railway Co.* v. *Taylor*, 210 U. S. 281, a strictly civil case arising under the same statutes and upon which the Government relied; but it was held otherwise, the court saying (p. 578): "This contention is unsound, because the present action is a civil one."

It is a necessary conclusion from these cases (1) that, as respects a pecuniary penalty for the commission of a public offense, Congress competently may authorize, and in this instance has authorized, the enforcement of such penalty by either a criminal prosecution or a civil action; (2) that the present action is a civil one and appropriate under the statute; and (3) that, if not directed otherwise, such an action is to be conducted and determined accord-

ing to the same rules and with the same incidents as are other civil actions.

It is of no moment in this case that the act penalized, which theretofore was declared unlawful and styled an offense, was by the statute of 1907 denominated a misdemeanor, for the purpose in that, as was explained in *United States* v. *Stevenson*, was merely to make clear the Government's alternative right to prosecute as for a crime. There was no purpose to revoke the existing right to resort to a civil action or to take from the action any of the usual incidents of a civil case. Indeed, a purpose to the contrary is shown by the reënactment, without change, of the provision authorizing the action. It not only specifies who shall have the civil right of recovery, but also the mode of its exercise and enforcement; for it declares that the penalty "may be sued for and recovered" by the United States, or by any person, including the alien, who shall first bring the action in his own name and for his own benefit, "as debts of like amount are now recovered in the courts of the United States." This plainly contemplates that the proceedings in the action are to be in conformity with the recognized mode of adjudicating and enforcing debts of like amount in those courts, and this whether the action be by the Government or by an individual.

While the defendant was entitled to have the issues tried before a jury, this right did not arise from Article III of the Constitution or from the Sixth Amendment, for both relate to prosecutions which are strictly criminal in their nature (*Counselman* v. *Hitchcock*, 142 U. S. 547, 563; *United States* v. *Zucker*, 161 U. S. 475, 481; *Callan* v. *Wilson*, 127 U. S. 540, 549), but it did arise out of the fact that in a civil action of debt involving more than twenty dollars a jury trial is demandable. And while in a strictly criminal prosecution the jury may not return a verdict against the defendant unless the evidence estab-

lishes his guilt beyond a reasonable doubt, in civil actions it is the duty of the jury to resolve the issues of fact according to a reasonable preponderance of the evidence, and this although they may involve a penalized or criminal act.

So, in providing that the penalty may be sued for and recovered as debts of like amount are recovered, we think it was intended that a reasonable preponderance of the proof should be sufficient, that being one of the recognized incidents of an action of debt as well as of other civil actions.

This is the view which other Federal courts have generally applied in the administration of statutes authorizing a civil recovery of such penalties. *United States* v. *Brown*, 24 Fed. Cas. 1248; *3880 Boxes of Opium* v. *United States*, 23 Fed. Rep. 367; *Hawloetz* v. *Kass*, 25 Fed. Rep. 765; *The Good Templar*, 97 Fed. Rep. 651; *United States* v. *Southern Pacific Co.*, 162 Fed. Rep. 412; *New York Central & Hudson River Railroad Co.* v. *United States*, 165 Fed. Rep. 833; *United States* v. *Illinois Central Railroad Co.*, 170 Fed. Rep. 542; *Atchison, Topeka & Santa Fe Railway Co.* v. *United States*, 178 Fed. Rep. 12; *St. Louis Southwestern Railway Co.* v. *United States*, 183 Fed. Rep. 770. And such, also, is the prevalent course of decision in the state courts. 4 Wigmore on Evidence, § 2498; *People* v. *Briggs*, 114 N. Y. 56; *State* v. *Chicago, Milwaukee & St. Paul Railway Co.*, 122 Iowa, 22; *Hitchcock* v. *Munger*, 15 N. H. 97; *Sparta* v. *Lewis*, 91 Tennessee, 370; *O'Connell* v. *O'Leary*, 145 Massachusetts, 311, 312; *Munson* v. *Atwood*, 30 Connecticut, 102; *State* v. *Kansas City &c. Co.*, 70 Mo. App. 634; *Deveaux* v. *Clemens*, 17 Ohio C. C. 33; *Semon* v. *People*, 42 Michigan, 141; *Walker* v. *State*, 6 Blackf. 1; *Roberge* v. *Burnham*, 124 Massachusetts, 277. In the last case the Supreme Judicial Court of Massachusetts, in applying this measure of persuasion in an action for a penalty, said:

"The rule of evidence requiring proof beyond a reasonable doubt is generally applicable only in strictly criminal proceedings. It is founded upon the reason that a greater degree of probability should be required as a ground of judgment in criminal cases, which affect life or liberty, than may safely be adopted in cases where civil rights only are ascertained. 2 Russell on Crimes (7th Am. ed.), 727. It often happens that civil suits involve the proof of acts which expose the party to a criminal prosecution. Such are proceedings under the statute for the maintenance of bastard children, proceedings to obtain a divorce for adultery, actions for assaults, actions for criminal conversation or for seduction, and others which might be named. And in such actions, which are brought for the determination of civil rights, the general rule applicable to civil suits prevails, that proof by a reasonable preponderance of the evidence is sufficient."

The cases upon which the defendant relies do not compel or lead to a different conclusion. While in *United States v. The Brig Burdett,* 9 Pet. 682, language was used giving color to the contention that in an action such as this the true measure of persuasion is that applied in criminal prosecutions, the court was careful in *Lilienthal's Tobacco v. United States,* 97 U. S. 237, to point out (pp. 266–267) the distinction in this regard between criminal prosecutions and civil cases, and to show (p. 272) that the case of *The Burdett* is not an authority for disregarding the distinction and that in an action to enforce a forfeiture the jury, if satisfied of the truth of the charge upon which the forfeiture depends, "may render a verdict for the Government, even though the proof falls short of what is required in a criminal case prosecuted by indictment." In *Chaffee & Co. v. United States,* 18 Wall. 516, the trial court, probably in deference to what was said in the case of *The Burdett,* had instructed the jury that proof beyond a reasonable doubt was essential to a recovery; but as the Gov-

ernment had a verdict and judgment and was not in a position to assign error upon the instruction, the case hardly can be regarded as settling the propriety of such an instruction, especially as in *Coffey* v. *United States*, 116 U. S. 436, 443, thirteen years later, it was plainly assumed that in such actions the true measure of persuasion is not proof beyond a reasonable doubt but the preponderating weight of the evidence. The cases of *Boyd* v. *United States*, 116 U. S. 616, and *Lees* v. *United States*, 150 U. S. 476, are without present application, for they deal with the guaranty in the Fifth Amendment to the Constitution against compulsory self-incrimination, which, as this court has held, embraces proceedings to enforce penalties and forfeitures as well as criminal prosecutions and is of broader scope than are the guaranties in Article III and the Sixth Amendment governing trials in criminal prosecutions. *Counselman* v. *Hitchcock*, 142 U. S. 547, 563; *United States* v. *Zucker*, 161 U. S. 475, 481; *Hepner* v. *United States*, 213 U. S. 103, 112. See also *Callan* v. *Wilson*, 127 U. S. 540, 549; *Schick* v. *United States*, 195 U. S. 65, 68.

We conclude that it was error to apply to this case the standard of persuasion applicable to criminal prosecutions; and the judgment is accordingly reversed, with a direction for a new trial.

*Judgment reversed.*