UNITED STATES v. INTERNATIONAL SILVER CO.

(District Court, D. Connecticut. February 1, 1919.)

No. 2040.

1. ALIENS ⬦⟿58—ACTION FOR VIOLATION OF CONTRACT LABOR LAW—COMPLAINT.

   Complaint in an action under Contract Labor Act Feb. 20, 1907, c. 1134, § 5 (Comp. St. § 4250), to recover penalties for violation of the preceding section by inducing and encouraging the immigration of contract laborers, *held* insufficient in failing to allege facts showing that the aliens were contract laborers as defined in section 2 of the act (Comp. St. § 4244).

2. ALIENS ⬦⟿58—VIOLATION OF CONTRACT LABOR LAW—PENALTY.

   But one penalty can be imposed under Contract Labor Act Feb. 20, 1907, c. 1134, § 5 (Comp. St. § 4250), for the writing of a single letter to encourage the immigration of contract laborers, although more than one came in consequence.

At Law. Action to recover penalties by the United States against the International Silver Company. On demurrer to complaint. Demurrer sustained.

Raymond G. Lincoln, of Hartford, Conn., for the United States. Ralph O. Wells, of Hartford, Conn., for defendant.

⬦⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

THOMAS, District Judge.  The United States of America sues to recover two specific penalties of $1,000 each for two alleged violations of the so-called "Contract Labor Law."  Act Feb. 20, 1907, c. 1134, §§ 4, 5, 34 Stat. 900 (Comp. St. §§ 4248, 4250), as amended by Act March 26, 1910, c. 128, 36 Stat. 263.  The defendant demurred to the complaint.

[1] The first count of the complaint, as amended, alleges that on March 1, 1916, and for some time prior thereto, the defendant operated a factory in Meriden, and that on February 29, 1916, a Mrs. George C. Pearson, by and with the consent of her husband, both then residing in Nova Scotia and subjects of Great Britain, wrote the defendant a letter asking for employment for herself as a hand burnisher, inquiring at the same time if the defendant had any positions open for men, as her husband and son also desired positions; that the defendant on the 9th day of March, 1916, in reply thereto, wrote Mrs. Pearson as follows:

"Dear Madam:  Referring to yours of the 29th ult., we are in need of hand burnishers that have had experience on the general line of hollow ware, such as tea ware, waiters, meat dishes, cake baskets, sandwich trays, nut bowls, etc., made of german or nickel silver; also white enamel.  We are also looking for unskilled men.  Our female help in the burnishing line average from 12½ to 20 cents per hour; unskilled labor 17½ to 25 per hour.  The girls' minimum wage is 12½ cents per hour.  If you were in the states, and applied to us for a position, we could place you."

It is further alleged that on the 15th day of March, 1916, the husband wrote a letter to the defendant, in which he said that his wife could not leave at that time, but that he and his son would start at once, provided they were sure of securing employment from the defendant, and in reply thereto the defendant on March 20, 1916, wrote the husband the following letter:

"Dear Sir:  Referring to yours of the 15th, will say the conditions stated in your letter are satisfactory, and we will keep a place open for Mrs. Pearson.  Kindly advise when you will report for duty."

The complaint further alleges that, while this correspondence was passing between the parties, the husband was an alien, and was known by the defendant to be an alien, to wit, a subject of Great Britain, and that during that time, and until on or about April 4, 1916, he "was a contract laborer, and was known to the defendant corporation to be a contract laborer, to wit, an ordinary unskilled workman"; that on or about said 4th day of April, 1916, as a result of the correspondence above recited, and especially as a result of the letter of March 20, 1916, the husband entered the United States, and on April 5, 1916, went to Meriden, engaged board and lodging, and intended to make the same his permanent abode, but, hearing of a strike at the defendant's factory, returned to Nova Scotia on April 6th.

Upon these allegations it is charged that the defendant violated "An act to regulate the migration of aliens into the United States," approved February 20, 1907, as amended March 26, 1910, and that by the aforementioned acts and for violation of the statute the defendant has forfeited and made itself liable to pay the plaintiff $1,000 as a penalty.

The second count alleges the same acts respecting the son, and claims a further penalty in his case of $1,000.

The defendant demurs to each count, as well as to the relief prayed for in the second count. The grounds of demurrer are the same as to both counts of the complaint, and may be summarized as follows:

(1) Because the complaint fails to allege sufficient facts to show that the Pearsons were contract laborers within the meaning of the act.

(2) Because, it is not alleged in the complaint that the defendant had knowledge that the Pearsons were contract laborers, if such were the fact.

(3) Because it is not set forth that the defendant did prepay their transportation, or in any way assist or encourage their immigration, within the meaning of the act.

(4) Because it appears from the complaint that the acts done by the defendant were not contrary to the spirit of the act, and so constituted no violation of it.

An additional ground of demurrer is alleged as to the second count, to the effect that there were no dealings of any kind with the son.

The demurrer to the relief prayed for in the second count is based on the ground that the identical letters as to the husband are made the basis for the recovery of a penalty as to the son, and that only one penalty, in any event, could be recovered, even if a violation of the law as to the husband were found to exist.

The essential parts of the act here applicable provide:

Section 2: "That the following classes of aliens shall be excluded from admission into the United States: * * * Persons hereinafter called contract laborers, who have been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements, oral, written or printed, express or implied, to perform labor in this country of any kind, skilled or unskilled: * * * And provided further, that skilled labor may be imported if labor of like kind unemployed cannot be found in this country: And provided further, that the provisions of this law applicable to contract labor shall not be held to exclude professional actors, artists, lecturers, singers, ministers of any religious denomination, professors for colleges or seminaries, persons belonging to any recognized learned profession, or persons employed strictly as personal or domestic servants."

Section 4: "That it shall be a misdemeanor for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any way to assist or encourage the importation or migration of any contract laborer or contract laborers into the United States, unless such contract laborer or contract laborers are exempted under the terms of the last two provisos contained in section 2 of this act."

Section 5: "That for every violation of any of the provisions of section four of this act the persons, partnership, company, or corporation violating the same, by knowingly assisting, encouraging, or soliciting the migration or importation of any contract laborer into the United States shall forfeit and pay for every such offense the sum of one thousand dollars, which may be sued for and recovered by the United States, or by any person who shall first bring his action therefor in his own name and for his own benefit, including any such alien thus promised labor or service of any kind as aforesaid, as debts of like amount are now recovered in the courts of the United States; and separate suits may be brought for each alien thus promised labor or service of any kind as aforesaid. And it shall be the duty of the district attorney of the proper district to prosecute every such suit when brought by the United States."

34 Stat. 900.

The first and second reasons assigned for the demurrer may be grouped and discussed together, for they raise the question:   Has the complaint alleged facts sufficient to show that the Pearsons were "contract laborers," within the intendment of the law?

The defendant claims that the facts alleged are only conclusions, and that there are no facts pleaded in the complaint sufficient to show that the Pearsons were "contract laborers" within the meaning of the act under which this suit is brought, and insists that a "contract laborer," within the meaning of the Immigration Act, "is one who has been induced or solicited to migrate to this country by offers or promises of employment, or in consequence of agreements, oral, written, or printed, express or implied, to perform labor in this country of any kind, skilled or unskilled," and is not merely one who is "an ordinary unskilled workman," and that such facts, properly pleaded, should be set forth in the complaint.   The defendant further insists that it is not sufficient in law to set forth in a complaint brought under section 5 of the act that Pearson was a "contract laborer, to wit, an ordinary unskilled workman," which is the allegation found in the seventh paragraph of the complaint, and the allegation upon which the plaintiff relies.

In deciding the question thus raised, we may look for assistance to a decision of the Supreme Court of the United States in a very recent case touching the very statute under which this action was brought. In Scharrenberg v. Dollar S. S. Co., 245 U. S. 122, Mr. Justice Clarke construed sections 2, 4, and 5 of the act and on page 125 (38 Sup. Ct. 28, 29 [62 L. Ed. 189]) said:

"Section 2 of the act of 1907, as amended in 1910 (36 Stat. 263), furnishes this definition of 'contract laborers,' which must be read into sections 4 and 5 of the act of 1907: 'Persons  *  *  *  who have been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements, oral, written or printed, expressed or implied, to perform labor in this country of any kind, skilled or unskilled.'   Section 4 makes it a misdemeanor for any corporation 'in any way to assist or encourage the importation or migration of any contract laborer or contract laborers into the United States.'   Section 5 imposes severe penalties for every violation of the act 'by knowingly assisting, encouraging, or soliciting the migration or importation of any contract laborer into the United States.'   Thus a contract laborer is one who under the conditions described in the first of these statutes comes 'to perform labor in this country,' and the penalties denounced by the sections of the other act are against persons who knowingly assist or induce the importation or migration of such laborer into the United States."

The plaintiff relies upon United States v. Dwight Mfg. Co. (D. C.) 210 Fed. 74, to sustain its contention that the allegation contained in the seventh paragraph of its complaint meets the requirements, and argues that under this decision the demurrer should be overruled as to the first and second reasons assigned.   In order to decide whether this is true or not, it becomes necessary to ascertain what allegations were set forth in the complaint of the Dwight Case, and compare them with the allegations in the case at bar; for if the same, or substantially the same, allegations of fact are found to be here set forth as were set forth in the Dwight Case, I should feel obliged to follow Judge Dodge's decision, which in tenor is in harmony with the con-

clusion reached in Scharrenberg v. Dollar S. S. Co., supra, and overrule the demurrer so far as the first and second reasons are concerned. But, as I read the case, the allegations are not the same, nor even substantially the same. On page 75 Judge Dodge says:

> "The question upon each count is whether or not such a violation, by the defendant, of section 4, as incurs the penalty imposed by section 5, is sufficiently alleged. The violation charged in each count is that the defendant knowingly and unlawfully *assisted a certain alien to migrate* from a foreign country, * * * to the United States, *by knowingly and unlawfully prepaying his transportation.* * * * Each count *further* alleges that the alien named was an alien contract laborer within the true intent and meaning of the Immigration Act, *was an unskilled laborer*, and was not a contract laborer exempted under the terms of the last two provisos in section 2 thereof."

Continuing, on page 76 he says:

> "The declaration does more than allege that the aliens whose immigration was assisted as above were 'contract laborers' within the meaning of the statute. Each count is more specific upon this point. Each count begins by alleging that the defendant made to the alien named, and in the foreign country specified, 'a certain offer of employment.' Each count then describes the alleged offer as follows: 'That if said alien would migrate from said * * * to * * * said defendant would employ and pay said alien to perform for said defendant at said (place within the United States) certain manual labor; that is to say, to operate and assist in operating divers machines used by the defendant in its mill at said place * * * in the manufacture of cotton fabrics.' Having thus described the alleged offer or promise of employment made to the alien named, each count next alleges *that the defendant unlawfully assisted him to migrate by prepaying his passage to a place within the United States*, follows this by allegations that, *induced by the offer and assisted by the prepayment, he did migrate to the United States*, and concludes with allegations that he was not at the time an alien entitled to enter the country, that the defendant well knew the fact to be so, and that he owes the prescribed penalty."

The defendant there then raises the objection that the aliens were not sufficiently alleged to have been contract laborers within the act, and the same objection is raised here. But the complaint here does not contain the allegations found in the complaint which Judge Dodge was considering.

In the case at bar we have only the allegation set forth in the seventh paragraph of the complaint, and quoted in full it alleges:

> "(7) That during the period covered by the correspondence mentioned in paragraphs 2, 3, 4 and 5 hereof, and for a further period of time, to wit, until on or about April 4, 1916, the said *George C. Pearson was a contract laborer and was known to the defendant corporation to be a contract laborer, to wit, an ordinary unskilled* workman."

Nowhere in the complaint is it alleged that the defendant knowingly and unlawfully assisted Pearson to migrate from Nova Scotia to the United States by knowingly and unlawfully prepaying his transportation, or inducing or soliciting him, or encouraging him, to so migrate; and nowhere in the complaint is it alleged that Pearson, whose immigration was assisted as above, was a contract laborer within the meaning of the statute; and nowhere in the complaint is it set forth that the defendant made to Pearson in Nova Scotia a "certain offer of employment"; and nowhere in the complaint does it appear,

even if any offer of employment was made, of what the offer consisted; nor is it alleged that the defendant unlawfully assisted him to migrate by doing anything prohibited by the act; nor is it alleged that, induced by the offer or assisted in any way, did he migrate to the United States; nor does it appear anywhere in fact that any of the allegations set forth in the Dwight Case, which formed the gravamen of the complaint upon which Judge Dodge overruled the demurrer, are set forth in this complaint.

But in the second Dwight Case ([D. C.] 210 Fed. 81) it appears that the allegations of the complaint were substantially the same as they are here, and in sustaining the demurrer Judge Dodge said:

"The facts alleged do not make it appear with sufficient distinctness that the alien, whose migration the defendant is charged with assisting by prepaying his passage, was a 'contract laborer' within the definition of the statute at the time of the alleged prepayment. It is not enough to allege him to have been 'a certain alien contract laborer,' without setting forth facts which clearly bring him within said definition."

It follows that the demurrer to the first and second counts of the complaint must be sustained, for the first and second reasons above set forth. It therefore is unnecessary to discuss or decide the remaining reasons of demurrer.

[2] The demurrer to the relief prayed for in the second count must be sustained upon the authority of United States v. N. Y. Central R. R. Co. (D. C.) 232 Fed. 179. There the defendant arranged for the importation of five alien laborers with whom it had made contracts of employment, and had arranged to assist their importation by furnishing them a joint free railroad pass, which the court held to be equivalent to the prepayment of their fares in cash, and decided that this was but a single act applicable to all five, and hence one penalty could be imposed. On page 184 Judge Ray said:

"As there was but one solicitation, all one act, the defendant incurred one penalty."

This ruling was affirmed by the Circuit Court of Appeals for the Second Circuit on appeal. 239 Fed. 130, 152 C. C. A. 172. So here there was but one transaction, all one act, and, even if the allegations of the second count be sufficient to state a cause of action, there could be only one recovery.

Counsel for plaintiff direct attention to U. S. v. Regan, 232 U. S. 37, 34 Sup. Ct. 213, 58 L. Ed. 494, as sustaining the contrary doctrine, but a careful reading of the case fails to disclose that the question was even raised. In stating the question presented, the court said on page 40 of 232 U. S., on page 214 of 34 Sup. Ct. (58 L. Ed. 494):

"The question now to be considered is whether it was essential to a recovery that the evidence should establish the violation beyond a reasonable doubt."

After collating and discussing the cases bearing upon that proposition at some length, the court concludes by saying on page 50 of 232 U. S., on page 218 of 34 Sup. Ct. (58 L. Ed. 494):

"That it was error [for the trial court] to apply to this case the standard of persuasion applicable to criminal prosecutions"

—and held that while the statute is penal in its nature, and may involve a penalized or criminal act, it is not essential to a recovery by the government that the evidence establish the violation beyond a reasonable doubt as in a criminal case, but a reasonable preponderance of proof is sufficient.

Demurrer sustained.