MITCHELL v. COMMISSIONER OF INTERNAL REVENUE.
No. 134.

Circuit Court of Appeals, Second Circuit.
May 10, 1937.

874

William Wallace and Chadbourne, Stanchfield & Levy, all of New York City, (William Wallace, Leonard P. Moore, and David S. Hecht, all of New York City, of counsel), for petitioner.

Robert H. Jackson, Asst. Atty. Gen., and Edward S. Greenbaum, Sewall Key, and Lucius A. Buck, Sp. Assts. to the Atty. Gen., for respondent.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a petition by Charles E. Mitchell, a taxpayer, to review a decision of the Board of Tax Appeals determining a deficiency of $728,709.84 and a 50 per cent. penalty of $364,354.92 in income taxes for the year 1929.

The questions raised by the petition to review relate to a loss taken by Mitchell and an income item omitted by him in his 1929 income tax return and are the following:

(1) Was an alleged sale by the taxpayer to his wife in 1929 of 18,300 shares of National City Bank at $212 per share a real sale that justified his deduction of a loss of $2,872,305.50 from his gross income in computing taxes?

(2) Was the payment of $666,666.67 by the National City Company which was made to the taxpayer in 1929 from the so-called management fund as compensation for services, but omitted from his return for that year, taxable income?

(3) Was the deduction of $2,872,305.50, or the omission of $666,666.67, due to a fraudulent attempt to evade taxes which justified the 50 per cent. penalty imposed by the Commissioner?

(4) Was the finding of a tax deficiency by the Commissioner on account of the error in dealing with deduction and omission of the above items by the taxpayer precluded by his acquittal under the indictment for fraudulent tax evasion which was based upon those very items?

(5) In any event, could the 50 per cent. penalty properly be imposed where the taxpayer was acquitted under such indictment?

The Commissioner determined the tax deficiency of Mitchell for the year 1929 because of the omission of $666,666.67 from his return, and the inclusion therein of the alleged loss from the sale of 18,300 shares of National City Bank stock to Mrs. Mitchell. The Commissioner surcharged his return with the former item, disallowed the latter, and imposed the 50 per cent. penalty under section 293 (b) of the Revenue Act of 1928, 26 U.S.C.A. § 293 (b) and note, for "fraud with intent to evade tax." The tax deficiency based upon these items and the 50 per cent. penalty which had been assessed by the Commissioner were affirmed by the Board of Tax Appeals. Four members of the Board agreed with the result, but held that the item of $666,666.67, though taxable income, was not shown to have been fraudulently omitted from the return. One member, McMahon, held that the evidence did not establish fraud as to that item or as to the loss taken for the sale to Mrs. Mitchell, and both members McMahon and Smith held that by the decision of the Supreme Court in Coffey v. United States, 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684, the acquittal of Mitchell under the indictment barred a finding of fraud and consequently the determination of the tax deficiency.

It must be borne in mind that our power to review the Board of Tax Appeals is confined to questions of law and that we are bound by its findings of fact in support of which there is any substantial evidence. McCaughn v. Real Estate Co., 297 U.S. 606, 56 S.Ct. 604, 80 L.Ed. 879; General Utilities Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154; Hulburd v. Commissioner, 296 U.S. 300, 306, 56 S.Ct. 197, 200, 80 L.Ed. 242; Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 736, 79 L.Ed. 1343. We think there can be no doubt that there was substantial evidence before the Board that the item of $666,666.67 was income of the taxpayer,

that the loss incurred through the alleged sale to Mrs. Mitchell was not a genuine loss, and that the omission of the first item and the deduction of the loss were fraudulent attempts to evade taxes.

■ There was ample evidence that the sale of 18,300 shares of stock to Mrs. Mitchell did not represent a genuine transaction. It was prompted by the realization by Mitchell during that year of an income from which some loss had to be deducted if the payment of a huge tax was to be avoided. Mrs. Mitchell's assets aside from chattels and the cash value of certain insurance policies on the life of her husband amounted to $940,994.12, of which only $32,027.80 was cash. Yet Mitchell purported to sell to her 18,300 shares of bank stock at $212 a share, aggregating a total obligation to him on her part of $3,879,600. His offer to sell was evidenced by a letter on December 20, 1929, in which he stated that the shares were at present carried in a loan with J. P. Morgan & Co. for his account and that for her convenience he would arrange so to continue the carriage of the stock subject to her payment of the amount due, "the debt in any event to be liquidated by you within nine months from the date hereof." The same day she wrote confirming the purchase and authorizing him to sell the shares whenever it seemed proper at not less than $220 per share. No notification of the transaction was then given to J. P. Morgan & Co., nor was any arrangement made with them to withdraw the stock from the collateral loan at $212 per share, though Mitchell's counsel had advised him that such an arrangement ought 'to be made. The same day he notified Taff & Co., in whose name the certificates were registered, that dividends received from the stock subsequent to January 2, 1930, were to be paid to Mrs. Mitchell. No payments on account of the purchase price of the stock were ever made. Certain so-called "interest payments" were made by Mrs. Mitchell to the taxpayer out of her bank account. These interest payments were in excess of the dividends received from the stock by $258,267.69. In order to make them without depleting her personal estate, she received from her husband between December 20, 1929, and December 31, 1932, various large sums of money purporting to be birthday, wedding anniversary, and other gifts. The illusory nature of a purchase in a case where the seller furnishes the money to meet interest on the purchase price is manifest. The purchase of the stock by Mrs. Mitchell as an investment at a contract price of $3,879,600, payable within nine months and with no means to meet the obligation, is in itself highly improbable, if not fantastic. The transaction is much more explicable as an ostensible, even if fraudulent, means of registering a deductible loss than as a way of making an investment. In January, 1932, at the annual stockholders' meeting of the National City Bank, Mitchell was asked by a stockholder whether he had disposed of any of his stock and replied: "Not a single share, sir. As a matter of fact I am buying all I can possibly get and that I can possibly pay for." Later, on March 5, 1932, he forwarded to the National City Company a letter from his counsel advising that in their opinion that company was under obligation to take up from the Morgan loan "at their net present cost" the 18,300 shares of stock that he was carrying in order to relieve him from the loss he had already incurred in making a market for stock of the National City Bank. No suggestion was made in the letter that the 18,300 shares of stock had theretofore been sold to Mrs. Mitchell. The letter was presented to the board of directors of the company who conferred about Mitchell's claim and secured an opinion from John W. Davis, Esq., that it had no legal basis. On March 24, by another exchange of letters, Mrs. Mitchell purported to resell the 18,300 shares of stock to her husband at the original purchase price of $212 a share, although the then market price was $45 a share and Mitchell was insolvent to the amount of $3,000,000. Just as in the transaction of December 20, 1929, no cash passed between Mitchell and his wife. Under the letters exchanged on March 24, 1932, Mrs. Mitchell was released from any further obligation in connection with the transaction. Thus we find an arrangement having no practical object other than to escape income taxes—an arrangement whereby a husband purports to sell stock to his wife without obtaining either note, security, or cash payment, and finally purports to buy it back at a time when he is seeking to have his company relieve him from the Morgan collateral loan. Under the circumstances, it may be reasonably supposed that he assumed to buy back the stock so as to have unquestionable title if the National City

876

Company should prove willing to take up the shares. Both in case of the alleged sale and repurchase Mitchell made the initial offer to his wife and throughout the transactions treated the stock as essentially his own. It should also be noted that at the time of the alleged sale to Mrs. Mitchell on December 20, 1929, no internal revenue or state transfer stamps were attached to the contract of sale, no bill of sale was ever executed, nor were the certificates of stock ever out of the possession of J. P. Morgan & Co., by whom they were continuously held as collateral for Mitchell's indebtedness.

It is clear that there was substantial evidence in support of the finding by the Board of Tax Appeals that "the transaction was not a bona fidè sale and the alleged loss did not constitute an allowable deduction from income" and that "the alleged sale was fraudulent with intent to evade tax." Record, p. 92.

▆ There also was sufficient evidence to support the finding of the Board that the failure of the taxpayer to report the payment of $666,666.67 from the management fund in 1929 was fraudulent.

The management fund was created by resolution of the directors of the National City Company, an affiliate of the bank, on February 8, 1921, as a means for providing additional compensation for its officers. The fund was derived from a certain percentage of the net operating income which under resolutions adopted in 1927 was set up each month and was distributable by the executive committee at the end of the year, or from time to time during the year. Distributions were made semiannually from the time of the creation of the fund in 1921 until the distribution of $666,666.67 in question on July 1, 1929. There seems to be ample justification for holding that the payment of $666,666.67 on July 1, 1929, became an irrevocable appropriation of moneys at the time when it was made, although future payments were within the control of the executive committee. The company incurred such losses during the last three months of 1929 that there were no net earnings for the year as a whole. Under these circumstances, the question whether there was a right to retain the distributions of July 1 is said to have been investigated, and as a result receipts were prepared and signed by Mitchell and the other distributees, acknowledging that the distributions of July

1, 1929, were overpayments and agreeing that they were to be repaid from future additions to the management fund "before I become entitled to any further payments therefrom." On December 30 the board of trustees adopted a resolution to that effect. Because of the contingent obligation created by the receipt, Mitchell contends that he was justified in omitting the item of $666,666.67 from his income tax return, and he fortifies his position by proof that counsel advised him that the item did not have to be returned. We can imagine no legal ground for saying that it was not taxable income. In respect to the claim of justification because of the advice of counsel, it is to be remembered that it was Mitchell who suggested that the right to retain the $666,666.67 should be looked into, recommended that the distributions should only be treated as advances of future accumulations of the management fund and, on December 30, 1929, presented that plan to the directors who adopted it. We cannot see that he was ever obliged to repay the $666,666.67, nor is it shown that he ever attempted to repay it. In no event was it to be repaid except from shares in the management fund, if any, which he might be entitled to receive after 1929. Such a contingent obligation amounted to nothing. The disposal of the management fund was at all times wholly within the control of the executive committee who could appropriate or withhold distributions as they saw fit. Under such circumstances there is every reason to suppose that the purpose of Mitchell was to retain the $666,666.67 without returning it as income. His theory that his contingent obligation offset his receipt of income has such little plausibility that it is hard to believe that an able man of large experience like Mitchell could entertain an honest belief in it. In any event the finding of the Board that the transaction was fraudulent does not lack substantial support in the evidence.

It is argued for the petitioner that all of the acts involved in the present proceeding were determined against the government when he was acquitted in the criminal prosecution against him under section 146 (b) of the Revenue Act of 1928, 26 U.S.C.A. § 145 (b) and note of the charge in the indictment that he "unlawfully, wilfully, knowingly, feloniously and fraudulently did attempt to defeat and evade an income tax. * * *"

Section 146 (b), Revenue Act of 1928, provides that: "Any person required under this title [chapter] to collect, account for, and pay over any tax imposed by this title, * * * who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

■ In United States v. Scharton, 285 U.S. 518, 52 S.Ct. 416, 417, 76 L.Ed. 917, where there was an indictment under a similar section of the revenue laws, the question was whether the three or the six year statute of limitations which then barred prosecutions should be applied. The three-year statute was general in terms and the six-year statute (18 U.S.C.A. § 585) an exception limited to "offenses involving the defrauding or attempting to defraud the United States or any agency thereof." On demurrer to the indictment in which the defendant was charged with a willful attempt to evade taxes by falsely understating taxable income, the Supreme Court held that the three-year, and not the six-year, statute applied. Roberts, J., who wrote the opinion, said that under the section governing the charge an averment of fraud "would be surplusage, for it would be sufficient to plead and prove a willful attempt to evade or defeat." If Mitchell, when indicted under section 146 (b), had been convicted, his conviction would not have been res judicata as to fraud in the case at bar because proof of fraud would not have been necessary to establish the criminal offense denounced by the statute. United States v. Scharton, 285 U.S. 518, 52 S.Ct. 416, 76 L.Ed. 917. But the acquittal of Mitchell under the indictment founded on section 146 (b) necessarily involved a finding that he was guilty of no fraud, since a fraudulent intent "to evade or defeat" a tax would necessarily involve

the willful attempt to "evade or defeat" broadly covered by section 146 (b).

From the indictment and the charge of the court in the criminal prosecution it is clear that the government relied on the same facts as it relies on in the case at bar to establish fraud.[1]

■ The doctrine of res judicata is plainly inapplicable to the portion of the tax other than the 50 per cent. so-called penalty. The acquittal in the criminal case only determined that Mitchell had not been proved guilty beyond a reasonable doubt of the criminal acts charged in the indictment. It plainly did not preclude the Commissioner from asserting a tax deficiency against him. Murphy v. United States, 272 U.S. 630, 632, 47 S.Ct. 218, 71 L.Ed. 446; Lewis v. Frick, 233 U.S. 291, 302, 34 S.Ct. 488, 58 L.Ed. 967; Chantangco v. Abaroa, 218 U.S. 476, 481, 31 S.Ct. 34, 54 L.Ed. 1116; Stone v. United States, 167 U.S. 178, 186–189, 17 S.Ct. 778, 782, 42 L.Ed. 127. In the last case, after an indictment and acquittal in the federal court upon a charge of unlawfully cutting and removing timber from public lands, Stone was sued by the United States for the value of the timber removed. In the suit the prior judgment of acquittal was pleaded in bar, Stone relying upon the decision of the Supreme Court in Coffey v. United States, 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684. The Supreme Court, in an opinion by Harlan, J., held that the decision in Coffey v. United States did not apply to a situation where there had been an acquittal upon a criminal charge followed by a civil action requiring a different degree of proof, and said:

"In the criminal case his acquittal may have been due to the fact that the government failed to show beyond a reasonable doubt the existence of some fact essential to establish the offense charged, while the same evidence in a civil action brought to recover the value of the property illegally converted might have been sufficient to

---

[1] Section 276 of the Revenue Act of 1928, 26 U.S.C.A. § 276 and note, provides that:

"In the case of a false or fraudulent return with intent to evade tax * * * the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

Section 293, 26 U.S.C.A. § 293 and

note, provides that:

"If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed."

In the case at bar fraud had to be established in order to avoid the two-year statute of limitations (26 U.S.C.A. § 275 note) which would otherwise apply.

entitle the government to a verdict. * * * It cannot be said that any fact was conclusively established in the criminal case, except that the defendant was not guilty of the public offense with which he was charged. We cannot agree that the failure or inability of the United States to prove in the criminal case that the defendant had been guilty of a crime either forfeited its right of property in the timber, or its right in this civil action, upon a preponderance of proof, to recover the value of such property." See, also, United States v. Donaldson-Shultz Co., 148 F. 581 (C.C.A.4).

■ But the petitioner claims that under Coffey v. United States, 116 U.S. 436, 6 S. Ct. 437, 29 L.Ed. 684, his acquittal precludes the assessment of deficiency even of the normal tax without the 50 per cent. penalty. Any inference to that effect that might originally have existed has, we think, been eliminated by the later Supreme Court decisions already cited. The only rule necessarily derivable from Coffey v. United States would seem to be that an acquittal in a criminal prosecution is a bar to a civil action to enforce fines or forfeitures of property which are in their nature criminal penalties. Though this rule seems hard to justify in view of the different degrees of proof required in order to establish criminal guilt and civil responsibility,[2] it is implicit in the decision of Coffey v. United States which is binding on us in the absence of a modification by the Supreme Court.

■ The question is whether the 50 per cent. additional tax was designed to punish fraudulent tax dodgers or was a mere preventive measure. An order padlocking a building as a nuisance under the National Prohibition Act (27 U.S.C.A. § 1 et seq.) was held in Murphy v. United States, 272 U.S. 630, 47 S.Ct. 218, 71 L.Ed. 446, to have been made to enforce a statutory preventive measure, and not a penalty. But in United States v. La Franca, 282 U.S. 568, 51 S.Ct. 278, 280, 75 L.Ed. 551, it was said that the imposition of a tax "in double the amount" provided by law "upon evidence of an illegal sale" of liquor under the act was a penalty and could not be "convert-ed into a tax by the simple expedient of calling it such." Murphy v. United States was distinguished on the ground that the tax levied in United States v. La Franca in double the amount was a penalty.

We think that the decisions in Coffey v. United States, 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684, and United States v. La Franca, 282 U.S. 568, 51 S.Ct. 278, 75 L. Ed. 551, require us to treat the imposition of the penalty of 50 per cent. as barred by the prior acquittal of Mitchell in the criminal action.

The order of the Board of Tax Appeals is accordingly modified so as to eliminate the penalty of $364,354.92 for the year 1929 and in other respects is affirmed.

---

[2] The evidence necessary to establish "fraud with intent to evade tax" under section 293 (b) of the Revenue Act of 1928, 26 U.S.C.A. § 293 (b) and note, need only be clear and convincing but need not be proof beyond a reasonable doubt. Oriel v. Russell, 278 U.S. 358, 364, 49 S.Ct. 173, 174, 73 L.Ed. 419; United States v. Regan, 232 U.S. 37, 46–48, 34 S.Ct. 213, 58 L.Ed. 494.