843 F.2d 1388
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert BLAIR, Defendant-Appellant,
and
One Polaroid Land Camera; One Polaroid Land Identification
System, Defendants.
 No. 87-2084.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Feb. 23, 1988.
Decided: April 7, 1988.
 
 Robert Blair, appellant pro se.
 Donna Helen Triptow, Office of the United States Attorney, for appellee.
 Before ERVIN, CHAPMAN and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Robert Fred Blair appeals from an order of the district court awarding summary judgment for the United States in a civil forfeiture action initiated by the government pursuant to 18 U.S.C. Sec. 492 against certain photographic equipment. We reverse.
 
 
 2
 The property sought to be forfeited in this case was allegedly used in a scheme to defraud the government of $500,000, wherein counterfeit treasury checks were issued, accompanied by phony identification cards which were to be used in cashing the checks. Pursuant to a search warrant executed on or about November 15, 1979, photographic equipment was seized from the home of Blair's wife, Janet Bartee Blair, along with seventy-nine other items of personal property. Mrs. Blair, formerly an employee of the Social Security Administration, had been suspected of involvement in the counterfeiting operation. On May 27, 1980, she pled guilty to all counts brought against her charging her with violation of 18 U.S.C. Secs. 371, 471, 472, 492, and 495. She was sentenced on July 22, 1980, to ten years in prison and fined $50,000.
 
 
 3
 On December 5, 1983, the United States commenced the instant action by filing a complaint of forfeiture pursuant to 18 U.S.C. Sec. 492 against the photographic equipment. Robert Blair, who had been attempting since May of 1982 to secure the return of the articles seized in the 1979 search, filed an answer and a petition for remission of the equipment.[1] Blair had been confined in a California medical facility at the time of the seizure for his involvement in two murders. He apparently remains confined there.
 
 
 4
 The petition for remission alleged Blair's exclusive ownership of the photographic equipment. Blair asserted that he had never given his wife permission to use the equipment and that the equipment had only been used for lawful purposes.
 
 
 5
 The forfeiture proceedings in district court were stayed pending resolution of Blair's remission petition by the Secretary of the Treasury. The district court lifted the stay following the secretary's denial of the petition.
 
 
 6
 With the permission of the district court, Blair filed a sworn counterclaim seeking return of the property and damages. The counterclaim asserted, inter alia, that
 
 
 7
 (1) the photographic equipment belonged to Blair and his business partner, Betty Elaine Vineyard, and was used in their business, d/b/a Professional Services, Inc.;
 
 
 8
 (2) Blair's wife never had permission to use the equipment;
 
 
 9
 (3) the equipment was not used to commit any crime;
 
 
 10
 (4) the government "was aware" that Blair owned the property because of papers confiscated in the 1979 search and because of extensive correspondence from Blair;
 
 
 11
 (5) the government was aware that Robert Blair was also known as Robert Bartee; and
 
 
 12
 (6) Blair was denied his due process rights to reasonably prompt notice and institution of the forfeiture proceeding, which prejudiced his ability to defend the belated action, including his ability to fully document ownership of the equipment.
 
 
 13
 Blair submitted several documents, including a work order and some receipts, in an attempt to demonstrate his ownership of the equipment. While the documents did not conclusively demonstrate Blair's ownership of the seized equipment, they did indicate that someone named Robert Bartee, who was associated with a company called "Professional I.D. Services," purchased some photographic equipment in 1975 which generally fit the description of the equipment sought to be forfeited.
 
 
 14
 The district court granted a motion for summary judgment filed by the government. The court held that because Blair had failed to establish ownership of the photographic equipment, he lacked standing to contest forfeiture. The court further held that even if Blair had owned the property and did not give his wife permission to use it, the equipment was still subject to forfeiture under 18 U.S.C. Sec. 492 because that statute required only that the property sought to be forfeited was used in a crime proscribed by the statute.
 
 
 15
 * In order to have standing to contest forfeiture, or to seek remission of property sought to be forfeited, it is necessary to demonstrate some ownership or possessory interest in the property. United States v. $38,000.00 in United States Currency, 816 F.2d 1538, 1543-44 (11th Cir.1987); United States v. One 18th Century Colombian Monstrance, 797 F.2d 1370, 1374-75 (5th Cir.1986), cert. denied, 55 U.S.L.W. 3712 (U.S. Apr. 20, 1987) (No. 86-1232); United States v. One Hundred Twenty-Two Thousand Forty-Three Dollars ($122,043.00) in United States Currency, 792 F.2d 1470, 1473 (9th Cir.1986). However, a claimant need not prove the merits of his underlying claim to establish standing to contest forfeiture; he need only show "a facially colorable interest in the proceedings." United States v. One 18th Century Colombian Monstrance, 797 F.2d at 1375. A "facially colorable ownership interest" is sufficient to confer standing to contest forfeiture. United States v. One 18th Century Colombian Monstrance, 802 F.2d 837, 838 (5th Cir.1986).
 
 
 16
 In the present case, Blair demonstrated a facially colorable ownership interest in the photographic equipment. Blair claimed ownership of the equipment. The equipment was seized from his wife's house. The government did not dispute Blair's contention that the house in Maryland was also his prior to his incarceration in California. Blair submitted six documents linking a man named Robert Bartee and Professional I.D. Services, Inc. with property fitting the description of the seized photographic equipment. Blair claimed that he used the name "Bartee," his wife's maiden name, as an alias and that the F.B.I. had the alias on record. Blair's contentions relative to the alias and his connection to Professional I.D. Services, Inc. were not disproved by the government. Finally, the government did not respond to Blair's contention that it seized papers demonstrating proof of ownership in the 1979 raid.
 
 
 17
 These facts, while not conclusively establishing Blair's ownership of the photographic equipment, are sufficient to demonstrate a facially colorable claim to the property. Therefore, the district court erred in concluding that Blair failed to bring forth sufficient proof of ownership to preclude entry of summary judgment for lack of standing.
 
 II
 
 18
 The district court held that, even assuming that Blair had standing to contest forfeiture, the government was entitled to summary judgment because ownership of the property or the actions of the owner in relation to the property were irrelevant under 18 U.S.C. Sec. 492. The court interpreted 18 U.S.C. Sec. 492 as providing for the forfeiture of property whenever the property is used to commit a crime proscribed by the statute. While the court's interpretation of the statute is literally correct, application of the statute in accordance with such an interpretation ignores some constitutional defenses to forfeiture. The most important such defense, which Blair raised at least facially in his pleadings, is known as the "Pearson Yacht " defense. The Pearson Yacht defense "originated" in dicta by the Supreme Court of the United States in Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 688-90 (1974). In Pearson Yacht, the Court stated:
 
 
 19
 [I]t would be difficult to reject the constitutional claim of an owner ... who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive.
 
 
 20
 416 U.S. at 689-90 (footnote and citation omitted).
 
 
 21
 In the instant case, Blair's evidence fairly presented the Pearson Yacht defense. Contrast United States v. 1966 Beechcraft Aircraft Model King Air, 777 F.2d 947, 951 (4th Cir.1985). Blair was apparently incarcerated in California during the period of time his wife was allegedly using his photographic equipment to commit a crime. He alleged that he did not give his permission for Janet Blair to use the equipment and that he was unaware of any legal or illegal use by her. These allegations, if proven, might establish the Pearson Yacht defense.[2] As genuine issues of material fact relative to the Pearson Yacht defense remain for resolution at trial, the district court erred in granting summary judgment for the government. See United States v. One Tintoretto Painting, 691 F.2d 603 (2d Cir.1982).
 
 
 22
 Another issue raised by Blair's pleadings is a possible due process violation resulting from the delay in initiating the forfeiture proceeding. See United States v. Von Neumann, 474 U.S. 242 (1986); United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency, 461 U.S. 555 (1983); Barker v. Wingo, 407 U.S. 514 (1972). On remand, the district court should determine whether the delay violated Blair's due process rights.
 
 
 23
 We reverse the decision of the district court and remand for further proceedings consistent with this opinion. On remand, the burden will be on the government to prove, by a preponderance of the evidence, that the photographic equipment was used in a manner subjecting it to forfeiture under 18 U.S.C. Sec. 492. See United States v. Regan, 232 U.S. 37, 46-48 (1914); Mayo v. United States, 425 F.Supp. 119, 122 (E.D.Ill.1977). If the government meets its burden of proof, the burden will be on Blair to prove, by a preponderance of the evidence, his ownership of the equipment and a defense to forfeiture. See Pearson Yacht, 416 U.S. at 689-90; Regan, 232 U.S. at 46-48; Beechcraft, 777 F.2d at 951.
 
 
 24
 We dispense with oral argument because the dispositive issues have recently been decided authoritatively.
 
 
 25
 REVERSED AND REMANDED.
 
 
 
 [1]
 Seventy-nine of the eighty-one articles seized were returned to Blair sometime prior to the initiation of the forfeiture proceeding against the photographic equipment, the only property retained by the government. One of the items returned to Blair was a California marriage certificate for Robert Fred Blair and Janet Elizabeth Bartee
 
 
 [2]
 Because the district court did not address the Pearson Yacht defense, this Court declines to determine what effect, if any, the Blair's California marriage has on the availability of the defense