**UNITED STATES of America, Plaintiff,**

v.

**FLEETWOOD ENTERPRISES, INC., Defendant.**

**Civ. A. No. 88–68–JLL.**

United States District Court, D. Delaware.

Dec. 14, 1988.

William C. Carpenter, Jr., U.S. Atty., and Kent A. Jordan, Asst. U.S. Atty., Wilmington, Del., and John R. Bolton, Asst. Atty. Gen., Surrell Brady and Richard C. Stearns, Attys., Civ. Div., Dept. of Justice, Washington, D.C., Peter S. Race and Peter B. Rustin, Dept. of Housing and Urban Development, Washington, D.C., of counsel, for plaintiff.

Richard K. Herrmann of Bayard, Handelman & Murdoch, Wilmington, Del., Lawrence F. Henneberger, Salvatore A. Romano, and Randall J. Boe of Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., and Richard Chernick and Steven E. Sletten of Gibson, Dunn & Crutcher, Los Angeles, Cal., and William H. Lear, Vice President–General Counsel, Fleetwood Enterprises, Inc., Riverside, Cal., of counsel, for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

The United States ("Plaintiff") filed this action to recover civil penalties from Fleet-

wood Enterprises, Inc. ("Fleetwood"), for alleged violations of the National Manufactured Housing Construction and Safety Standards Act of 1974 (the "Act"), 42 U.S. C. § 5401 *et seq.* (*See* Docket Item ("D.I.") 1.) There are four motions presently before the Court. Fleetwood has moved for leave of the Court to amend its answer, for the Court to allow discovery in connection with a defense it seeks to add by the amendment, and for the Court to compel other discovery. Plaintiff has moved for a protective order covering information which is also the subject of Fleetwood's motion to compel. For the reasons set forth below, Fleetwood's motions to amend and to allow discovery will be denied. Fleetwood's motion to compel will be denied in part and granted in part, thereby rendering Plaintiff's motion moot.

## I. BACKGROUND

Plaintiff filed this action on February 10, 1988, alleging that Fleetwood manufactured and offered for sale or sold nearly 20,000 homes which did not comply with the construction and safety standards issued under the Act by the Secretary of Housing and Urban Development ("HUD"). (D.I. 1.)[1] Fleetwood filed its answer on March 3, 1988, in which it asserted seven affirmative defenses challenging the action on various grounds ranging from the statute of limitations to the constitutionality of the construction and safety standards.[2]

On August 3, 1988, this Court issued a scheduling order under Rule 16, Fed.R. Civ.P., requiring, *inter alia,* the parties to this action to file any motion to amend any

pleading on or before August 15, 1988. (D.I. 45.) On August 15, 1988, Fleetwood filed one of the motions presently before the Court. (D.I. 46.) The motion seeks leave of the Court to amend the answer adding six affirmative defenses which challenge the construction and safety standards and allege Plaintiff brought this action against Fleetwood selectively and for an improper motive. *See* Section II *infra.*[3]

Thereafter, two more motions were filed by Fleetwood and one by Plaintiff regarding discovery in this case. On October 26, 1988, Fleetwood filed two motions. One motion requests the Court to allow discovery in connection with a defense that is the subject of its motion to amend. (D.I. 60.) The other seeks to compel Plaintiff to "completely" respond to discovery requests made by Fleetwood in May and June of 1988. (D.I. 62.) In response, on November 8, 1988, Plaintiff moved for entry of a protective order covering discovery which is also the subject of Fleetwood's motion to compel. (D.I. 64.)

Thus, a total of four motions, three by Fleetwood and one by Plaintiff, are presently before the Court. After considering the arguments contained in the voluminous written submissions of the parties, oral argument on November 21, 1988, and the post-oral argument submitted by Fleetwood,[4] the Court's opinion with respect to each of the four motions follows.

## II. FLEETWOOD'S MOTION FOR LEAVE TO AMEND ITS ANSWER

Fleetwood seeks leave of the Court to amend its answer under Rule 15(a), Fed.R.

---

1. Plaintiff alleges that "Fleetwood has made use of means of transportation and communication affecting interstate commerce and the mails to manufacture for sale, offer for sale and to sell manufactured homes, the manufacture of which affects interstate commerce," and that the "homes" do not comply with the construction and safety standards. (D.I. 1 at 3–4.)

2. On June 29, 1988, this Court entered a Memorandum Opinion (D.I. 41) and an Order (D.I. 42) denying in part and granting in part Plaintiff's motion to strike several of Fleetwood's affirmative defenses. The Court's order limited Fleetwood's constitutional challenges. *See United*

*States v. Fleetwood Enterprises, Inc.,* 689 F.Supp. 389 (D.Del.1988).

3. Fleetwood claims that it first sought, unsuccessfully, a stipulation from Plaintiff to add the defenses which are the subject of this motion. (D.I. 46 at 1.)

4. On November 22, 1988, following oral argument, Fleetwood submitted argument to this Court which it was unable to make at oral argument. (D.I. 73; *see also* note 26 *infra.*) Fleetwood's unpreparedness is curious since Fleetwood made the same argument, although without support, in its reply brief on the issue. (D.I. 51 at 19.)

Civ.P., to add six additional affirmative defenses. (D.I. 46.)[5] The defenses assert that:

> Each of the regulations and interpretative bulletins that form the basis of the complaint is arbitrary, capricious, an abuse of discretion, and contrary to law. [(D.I. 46 Ex. A at 7) the "Eighth Defense".]
>
> Each of the regulations and interpretative bulletins that form the basis of the complaint is contrary to and inconsistent with the enabling legislation. [(*Id.* at 8) the "Ninth Defense."]
>
> The administrative record in support of each of the regulations and interpretative bulletins forming the basis of the complaint is inadequate. [(*Id.* at 8) the "Tenth Defense."]
>
> Each of the regulations and interpretative bulletins that form the basis of the complaint is not supported by substantial evidence. [(*Id.* at 8) the "Eleventh Defense."]
>
> Each of the regulations and interpretative bulletins that form the basis of the complaint was promulgated in violation of proper procedure. [(*Id.* at 8) the "Twelfth Defense."]
>
> This proceeding was instituted against defendant selectively and for [an] improper motive. [(*Id.* at 8–9) the "Thirteenth Defense."]

Allowance of leave to amend under Rule 15(a) is within the sound discretion of this Court. *Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Lewis v. Curtis,* 671 F.2d 779, 783 (3d Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); *Dixon v. Pennsylvania R.R.,* 67 F.R.D. 425, 428–29 (M.D.Pa.1975). How-

ever, Rule 15(a) requires that leave to amend be "freely given when justice so requires." Fed.R.Civ.P. 15(a).[6]

Plaintiff opposes Fleetwood's motion arguing that leave to amend should be denied because the defenses Fleetwood seeks to add will not withstand a motion to dismiss (D.I. 48 at 3), and that granting leave will prejudice Plaintiff and unduly delay this case. (D.I. 48 at 17–18.)

### *The Defenses Will Not Withstand A Motion To Dismiss*

■ While this Court's discretion under Rule 15(a) is limited, *see J. E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 613 (3d Cir.1987), leave to amend may be denied where amendment would be futile because the defenses sought to be added are legally insufficient. *See Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); *see also Outboard Marine Corp. v. Pezetel,* 535 F.Supp. 248, 252 (D.Del.1982).[7]

The six defenses fit into two general categories, those that challenge the validity of the construction and safety standards and one that alleges selective enforcement of the Act. The two categories will be addressed separately below.

1. The Defenses Challenging Validity Of The Federal Standards

■ Plaintiff argues that the Eighth through the Twelfth Defenses challenge the validity of the construction and safety standards and that such challenges "may be brought *only* in the court of appeals [pursuant to the statutory provision for judicial review, 42 U.S.C. § 5405(a)(1) ], and not in district court." (D.I. 48 at 3–4.) The

---

**5.** The six affirmative defenses which Fleetwood now seeks leave of the Court to add are the same defenses Fleetwood sought to add by stipulation which Plaintiff refused. *See* note 3 *supra.*

**6.** In *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Supreme Court noted that "this mandate is to be heeded ... [and that] in the absence of any apparent or declared reason leave sought should ... be 'freely given.'"

**7.** Although *Massarsky* involved "claims" sought to be added to a "complaint" rather than "defenses" to an "answer," the Court concludes the present motion may nonetheless be denied where the defenses are legally insufficient, although the standard for legal sufficiency is that of a motion to strike under Rule 12(f), Fed.R. Civ.P., rather than a motion to dismiss under Rule 12(b)(6). *See* 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[4] at 15–80 (2d ed.1988).

gravamen of this argument appears to be that this Court is without subject matter jurisdiction to consider challenges to the validity of the standards in this proceeding because the Act provides for judicial review of a standard by a court of appeals within 60 days of the standard's effective date.[8]

While there is a strong presumption in favor of finding that Congress intended judicial review of action taken by an administrative agency, *see Bowen v. Michigan Academy,* 476 U.S. 667, 670, 106 S.Ct. 2133, 2136, 90 L.Ed.2d 623 (1986); *see also Abbott Laboratories v. Gardner,* 387 U.S. 136, 140–41, 87 S.Ct. 1507, 1511–12, 18 L.Ed.2d 681 (1967), it is well established that "Congress, acting within its constitutional powers, may prescribe the procedures and conditions under which, and the Courts in which, [such] judicial review ... may be had." *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 336, 78 S.Ct. 1209, 1218, 2 L.Ed.2d 1345 (1958); *Five Flags Pipe Line Co. v. Department of Transportation,* 854 F.2d 1438, 1439 (D.C. Cir.1988); *United Transportation Union v. Norfolk and Western R.R. Co.,* 822 F.2d 1114, 1119–20 (D.C.Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 700, 98 L.Ed.2d 651 (1988). Moreover, where a special procedure for judicial review is provided by an administrative agency's enabling legislation, "it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." *City of Rochester v. Bond,* 603 F.2d 927, 931 (D.C.Cir.1979); *accord United Mine Workers v. Marshall,* 667 F.2d 336, 340 (3d

Cir.1981); *see In re Establishment of Restland Memorial Park,* 540 F.2d 626, 628 (3d Cir.1976); *Getty Oil Co. v. Ruckelhaus,* 467 F.2d 349, 356 (3d Cir.1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973); *see also Whitney Nat. Bank v. Bank of New Orleans & Trust Co.,* 379 U.S. 411, 410, 85 S.Ct. 551, 553, 13 L.Ed.2d 386 (1965).

The Act provides such a procedure for judicial review. Section 5405(a)(1) provides in pertinent part that:

> In a case of actual controversy as to the validity of any order under Section 5403 of ... [the Act, which addresses the establishment, amendment or revocation of the construction and safety standards], any person who may be adversely affected by such order when it is effective may at any time prior to the sixtieth day after such order is issued file a petition with the United States court of appeals for the circuit wherein such person resides or has his principal place of business, for judicial review of such order [in accordance with the provisions of sections 701 through 706 of the Administrative Procedure Act (the "APA") ].

42 U.S.C. § 5405(a)(1). The Court concludes that § 5405(a)(1) applies to the construction and safety standards issued under the Act, and more particularly the standards forming the basis of Plaintiff's complaint in this case.[9] Nothing in the legislative history of the Act or the statutory scheme suggests that Congress intended judicial review of the standards outside of § 5405(a)(1).[10] Therefore, it is presumed

---

**8.** A jurisdictional defect in the defenses would clearly render them legally insufficient for purposes of the present motion. *See Dixon,* 67 F.R.D. at 428–29; *see also Kiser v. General Electric Corp.,* 831 F.2d 423, 427 (3d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1070, 99 L.Ed.2d 238 (1988).

**9.** The legislative history of § 5405(a)(1) provides that the section "[w]ould give [a] party adversely affected by [an] order establishing standards [a] right to appeal to [the] appropriate United States Court of Appeals." *See* S.Rep.No. 93–693, *reprinted in,* 1974 U.S.Code Cong. and Admin. News at 4410.

**10.** A review of the statutory scheme supports the conclusion that, in addition to the post-effec-

tive judicial review provided under § 5405(a), Congress intended challenges to the standards proposed by HUD to be addressed to HUD prior to their becoming effective. The Secretary is directed to establish construction and safety standards after consultation with the Consumer Product Safety Commission, *see* 42 U.S.C. § 5403(a), and to the extent feasible with an Advisory Council consisting of the manufactured home industry along with members of consumer organizations, community interests, and representatives of State and local government, 42 U.S.C. § 5404(b), (a). And the standards are to be established in accordance with notice and comment provisions of the APA wherein manufacturers may participate in the rulemaking and have their views and objections

that Congress intended § 5405(a)(1), including the jurisdictional prescriptions of time and forum, to be the exclusive means of obtaining the judicial review it provides.[11]

Each of the Eighth, Ninth, Tenth, Eleventh and Twelfth Defenses clearly seeks the judicial review provided for under § 5405(a)(1). The language of the Eighth through Twelfth Defenses almost precisely tracks that contained in 5 U.S.C. § 706(2), the scope of review applicable to petitions under § 5405(a)(1). Furthermore, each of the cases cited to this Court by Fleetwood as authorizing the review it seeks here involves judicial review available under § 5405(a)(1). (D.I. 51 at 15–17.)[12] Therefore, this Court is without jurisdiction to consider the Eighth through Twelfth Defenses in this proceeding.[13]

heard by HUD. 42 U.S.C. § 5403(b); 5 U.S.C. § 553. Furthermore, *"[w]henever* any manufacturer is opposed to *any action* of the Secretary under section 5403 ... [, under which the standards are established,] *or under any other provision of ... [the Act]* on the grounds of increased cost *or for other reasons,* the manufacturer shall submit such cost and other information ... as may be necessary in order to properly evaluate the manufacturer's statement." 42 U.S.C. § 5406(a) (emphasis added).

**11.** The 60–day time limit for review and the court of appeals jurisdiction are supported by sound policy considerations. The 60–day time limit "serves the important purpose of imparting finality into the administrative process, thereby conserving administrative resources and protecting the reliance interests of regulatees who conform their conduct to the regulations." *See Natural Resources Defense Council v. Nuclear Regulatory Comm'n,* 666 F.2d 595, 602 (D.C.Cir.1981); *see also Raton Gas Transmission Co. v. Federal Energy Regulatory Comm'n,* 852 F.2d 612, 615 (D.C.Cir.1988); *Eagle–Picher Indus. v. E.P.A.,* 759 F.2d 905, 911 (D.C.Cir.1985); *National Industrial Constructors, Inc. v. Occupational Safety and Health Review Comm'n,* 583 F.2d 1048, 1052–53 (8th Cir.1978). And court of appeals jurisdiction over judicial review of agency action, including regulations, is justified by the need for national policy and by the appellate courts' ability to become familiar with particular agencies. *See Quivira Mining Co. v. E.P.A.,* 728 F.2d 477, 482 (10th Cir. 1984); *City of Rochester,* 603 F.2d at 936; *United States v. N.O.C., Inc., t/a Noble Oil Co.,* No. 87–3539, slip op. Westlaw page at 6 (D.N.J. Oct. 14, 1988) (available on WESTLAW, DCT database, 1988 WL 109727).

**12.** Fleetwood has cited the following cases to this Court in support of its position that the review it seeks is authorized: *National Industrial Sand Ass'n v. Marshall,* 601 F.2d 689 (3d Cir.1979) (review of regulations by the Third Circuit Court of Appeals pursuant to a statutory provision for judicial review, *see id.* at 694); *National Welfare Rights Org. v. Mathews,* 533 F.2d 637 (D.C.Cir.1976) (appeal from a determination by district court that regulation issued by HEW Secretary was valid); district court had authority to review regulations in accordance with § 706 of the APA in the absence of statutory procedure for judicial review; *State of New Jersey v. Department of Health & Human Services,* 670 F.2d 1262 (3d Cir.1981) (assuming this is the case Fleetwood intended to cite to the Court by "670 F.2d (3d Cir.1981) ... at 1283," (D.I. 57 at 16), review by the Third Circuit Court of Appeals pursuant to a statutory provision for judicial review, *see* 670 F.2d at 1268); *United Steelworkers of America v. Auchter,* 763 F.2d 728 (3d Cir.1985) (review by Third Circuit Court of Appeals under § 655(f) of OSHA, *see* note 14 *infra*); and *Bessemer and Lake Erie R.R. Co. v. I.C.C.,* 691 F.2d 1104 (3d Cir.1982), *cert. denied,* 462 U.S. 1110, 103 S.Ct. 2463, 77 L.Ed.2d 1340 (1983) (Supreme Court history not noted by Fleetwood) (review by Third Circuit Court of Appeals pursuant to 2 statutory provisions, *see id.* at 1107). (D.I. 57 at 15–17.)

**13.** To the extent the Ninth Defense alleges that the standards exceed the authority delegated to HUD by Congress, there is some authority for the proposition that this Court would not be without jurisdiction to provide relief where "a patent violation of agency authority" was alleged. *See Independent Cosmetic Manufacturers and Distributors, Inc. v. United States Dept. of Health, Education, and Welfare,* 574 F.2d 553, 554–56 (D.C.Cir.1978), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); *Nader v. Volpe,* 466 F.2d 261, 266 (D.C.Cir.1972). Therefore, this Court could examine the statutory delegation of authority for the limited purpose of deciding whether a patent violation has occurred. This would not involve "review" of the standards as provided for by § 5405(a)(1); *see Leedom v. Kyne,* 358 U.S. 184, 188, 79 S.Ct. 180, 183, 3 L.Ed.2d 210 (1958); *see also Skinner & Eddy Corp. v. United States,* 249 U.S. 557, 563, 39 S.Ct. 375, 377, 63 L.Ed. 772 (1919); or examination of the rulemaking record. *Cf. United Transportation Union,* 822 F.2d at 1120; *City of Rochester,* 603 F.2d at 936 (denying jurisdiction where challenges to validity are merely couched in terms of statutory violations); *F.C.C. v. ITT World Communications, Inc.,* 466 U.S. 463, 468, 104 S.Ct. 1936, 1939, 80 L.Ed.2d 480 (1984) ("Litigants may not evade ... [review provisions] by requesting the District Court to enjoin action that is the outcome of the agency's order."). In the present case, however, no "patent violation" has been alleged; and the standards at issue are clearly within the authority delegated. As Fleetwood's counsel stated at oral argu-

Fleetwood makes several arguments in support of its position that it should be granted leave to add the Eighth through Twelfth Defenses.

■ Fleetwood cites *Atlantic & Gulf Stevedores v. Occupational Safety & Health Review Comm'n*, 534 F.2d 541 (3d Cir.1976), as controlling authority requiring this Court to allow Fleetwood to challenge the validity of the standards in this proceeding. (D.I. 51 at 7.) Fleetwood urges this Court to read *Atlantic & Gulf Stevedores* as standing for the broad propositions that "there is a presumption of review in enforcement proceedings," (D.I. 56 at 6), and that "defendants in enforcement proceedings may challenge the validity of regulations unless Congress has spoken clearly to the contrary." (*Id.* at 5.) However, this Court does not read *Atlantic & Gulf Stevedores* as broadly as Fleetwood. The teachings of *Atlantic & Gulf Stevedores* are inapposite to the present case.

Like the Act, the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. § 651 *et seq.*, provided for direct review of OSHA regulations by a court of appeals within 60 days of a regulation's effective date. However, OSHA contained a separate provision for judicial review of OSHA administrative enforcement adjudications applying the regulations. This review was also by a court of appeals within 60 days.[14] The issue before the Third Circuit in *Atlantic & Gulf Stevedores* was whether a court of appeals could consider the validity of OSHA regulations when reviewing the adjudications as well as on direct review. To the extent that the Third Circuit addressed *judicial* review of the OSHA regulations it was in the context of considering the scope of its review of the administrative adjudications. *See id.* at 550, 551. The Third Circuit held that it could review the OSHA regulations, although only "as applied" in the administrative adjudication under review. *Id.* at 551–52.

The present case involves neither an administrative adjudication[15] nor judicial review of an administrative adjudication.[16] Therefore, this Court does not read *Atlan-*

---

ment, "[Fleetwood is] not going to say, and could not, that on its face the regulation, plain and simple, is contrary to the statute." (Transcript ["Tr."] at 10.)

**14.** The Secretary of OSHA was authorized to issue citations to employers in violation of any standard, rule or regulation promulgated under OSHA. *See* 29 U.S.C. § 658(a). An employer issued a citation by the Secretary could request and obtain a hearing before the OSHA Commission in accordance with § 554 of the APA, and the Commission would thereafter issue an order affirming, modifying or vacating the Secretary's citation based on its findings of facts. *See* 29 U.S.C. § 659(c). Otherwise, if a hearing was not requested the citation was deemed a final order of the agency not subject to agency or judicial review. *See* 29 U.S.C. § 659(a). Commission orders issued after a hearing, under § 659(c), were subject to judicial review in a court of appeals within 60 days of their issuance. *See* 29 U.S.C. § 660(a). Judicial review of the standards promulgated by the Secretary was separately provided for also by a court of appeals within 60 days after the standard was effective. *See* 29 U.S.C. § 655(f). Section 655(f) was similar to § 5405(a)(1) of the Act in its prescriptions of time and forum for review.

**15.** The policy considerations that support permitting challenges to regulations during administrative adjudications before the issuing agency do not support such challenges in the present proceeding. However prudent it may be to permit a party to question an agency regarding its policies and rules, this Court is not possessed with the specialized expertise on which the policies and rules are based to substitute its judgment for that of HUD. This Court will not engage in judicial second-guessing of such policies and rules, particularly where Congress has clearly placed judicial review within the jurisdiction of the court of appeals.

**16.** Even absent an express statutory provision for judicial review of administrative adjudications, as was addressed in *Atlantic & Gulf Stevedores,* a different case is presented for judicial review where an agency has taken *further* action applying a previously issued regulation to a particular party, *see National Labor Relations Board v. Federal Labor Relations Authority,* 834 F.2d 191, 195–97 (D.C.Cir.1987); *Phelps Dodge Corp. v. Federal Mine Safety and Health Review Comm'n,* 681 F.2d 1189, 1192 (9th Cir.1982); *Functional Music, Inc. v. F.C.C.,* 274 F.2d 543, 546 (D.C.Cir.1958), *cert. denied,* 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 60 (1959); *see also MCI Telecommunications Corp. v. F.C.C.,* 765 F.2d 1186, 1190 (D.C.Cir.1985), than where a party merely seeks to challenge the validity of a regulation *ab initio. See Consolidation Coal Co. v. Donovan,* 656 F.2d 910, 914–16 (3d Cir.1981); *see also Getty Oil Co. v. Ruckelhaus,* 342 F.Supp. 1006, 1013–15 (D.Del.1972), *rev'd on other grounds,* 467 F.2d 349 (3d Cir.1972).

*tic & Gulf Stevedores* as teaching that the validity of the HUD standards may be challenged in this proceeding as well as under § 5405(a)(1).[17]

■ Fleetwood next argues that § 5405(a)(6) of the Act requires this Court to allow the defenses. (D.I. 51 at 9.) This argument is likewise without merit.

Section 5405(a)(6) provides that the *remedies* provided by § 5405(a) "shall be in addition to and not in substitution for any other *remedies* provided by law." 42 U.S.C. § 5405(a)(6) (emphasis added). The District of Columbia Circuit has interpreted several nearly identical provisions contained in different statutes, and has refused to construe such a provision as a license to resort to judicial review outside of that statutorily prescribed. *See Standard Forge and Axle Co. v. Coleman,* 551 F.2d 1268, 1269–70 (D.C.Cir.1972), *cert. denied,* 434 U.S. 823, 98 S.Ct. 69, 54 L.Ed.2d 81 (1977); *Nader,* 551 F.2d at 271; *see also Independent Cosmetic Manufacturers and Distributors, Inc. v. United States Dept. of Health, Education and Welfare,* 574 F.2d 553, 554 (D.C.Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978).[18] This Court embraces this construction. Section 5405(a)(6) addresses *remedies* provided by law and does confer jurisdiction on this Court. *See Abbott Laboratories,* 387 U.S. at 142–43, 87 S.Ct. at 1512–13; *Independent Cosmetic Manufacturers and Distributors, Inc.,* 574 F.2d at 555.[19] Therefore, this Court concludes that § 5405(a)(6)

does not authorize judicial review of the standards in this case.

Finally, Fleetwood argues that § 5405(a)(1) was inadequate because "the regulations at issue in this case have ... been interpreted and modified by HUD since their adoption ... [and] [t]hus, it was impossible for Fleetwood or any other manufacturer to object to their terms since such terms, and the manner in which HUD ultimately would choose to apply them, were completely unknown." (D.I. 56 at 7.) Fleetwood's argument appears to be that it was "impossible" to "object" to the standards under § 5405(a)(1) because HUD issued interpretive bulletins subsequent to issuing the standards; and that, therefore, this Court should open up both the interpretive bulletins and the underlying standards to the generalized challenges embodied by the proposed defenses in this proceeding.

■ Fleetwood's argument is not convincing. Assuming, *arguendo,* that this Court would have jurisdiction to engage in judicial review of the standards or interpretive bulletins in this proceeding where the review provided for by the Act has been shown to be inadequate, Fleetwood has not made such a showing.

That HUD issued interpretive bulletins subsequent to issuing the standards does not establish that § 5405(a)(1) was an inadequate means for Fleetwood to assert the challenges it seeks to interpose here.[20] Ex-

---

17. It is noteworthy that Fleetwood's own argument is not inconsistent with this Court's conclusion today. In its brief supporting the present motion Fleetwood argues that "unless Congress has *expressly* disallowed it, there is a presumption that challenges to the validity of agency orders can be brought as defenses in the context of an administrative enforcement proceeding ... [and that this principle is] clearly enunciated in [*Atlantic & Gulf Stevedores*]." (D.I. 51 at 7.) The Court need not question this argument since as noted, *supra,* the present case does not involve an "administrative enforcement proceeding."

18. The language has been interpreted to apply to "instances of agency action which ... [are] *ultra vires* or damaging beyond the capability of the statutory procedure to repair." *See Nader,* 466 F.2d at 271; *accord Independent Cosmetic*

*Manufacturers and Distributors, Inc.,* 574 F.2d at 554; *Standard Forge & Axle Co.,* 551 F.2d at 1269–70.

19. It is well established that the APA does not itself confer jurisdiction. *See Califano v. Sanders,* 430 U.S. 99, 100–109, 97 S.Ct. 980, 982–986, 51 L.Ed.2d 192 (1977).

20. If it is Fleetwood's argument that it could not have known how the standards would be applied until the interpretive bulletins were issued, the argument tends to support reviewability under § 5405(a)(1) rather than its inadequacy. *See RCA Global Communications, Inc. v. F.C.C.,* 758 F.2d 722, 730 (D.C.Cir.1985) (statutory time limitations on judicial review of agency action does not run until the agency has decided a question in a manner that reasonably puts aggrieved parties on notice of the rule's content);

cept for the conclusory argument of "impossibility," Fleetwood has provided no basis for this Court's conclusion that the review provided for under the Act was inadequate. Instead, nearly 14 years after HUD issued the standards [21] and 12 years after HUD issued the interpretive bulletins,[22] Fleetwood seeks leave of this Court to assert the same broad-based and generalized challenges clearly assertable under § 5405(a)(1).[23]

It was Fleetwood's responsibility to marshall its challenges to the validity of the standards and assert them properly in a timely petition for review. *See Eagle–Picher Indus., Inc. v. E.P.A.,* 759 F.2d 905, 912 (D.C.Cir.1985); *see also Atlantic & Gulf Stevedores,* 534 F.2d at 552 n. 13. Fleetwood was not free to "safely substitute ... [its] own notions of timely review for those of Congress." *See Eagle–Picher Indus., Inc.,* 759 F.2d 912; *see also State Farm Mutual Automobile Ins. Co. v. Dole,* 802 F.2d 474, 485 n. 20 (D.C.Cir.1986). *Cf. N.L.R.B. v. Cheney California Lumber Co.,* 327 U.S. 385, 388, 66 S.Ct. 553, 554, 90 L.Ed. 739 (1946) (when and under what circumstances judicial review is available depends on the statute under which it

is authorized). Fleetwood will not be permitted to challenge the validity of the standards or interpretative bulletins in this proceeding, and this Court will not engage in judicial review of the standards alleged to be violated in this case under the guise of applying them. *See Adamo Wrecking Co. v. United States,* 434 U.S. 275, 285, 98 S.Ct. 566, 573, 54 L.Ed.2d 538 (1978).

Having concluded that this Court is without jurisdiction to consider the invalidity defenses, and that Fleetwood's arguments to the contrary are unpersuasive, Fleetwood's motion for leave to amend will be denied with respect to the Eighth, Ninth, Tenth, Eleventh and Twelfth Defenses.[24]

### 2. Selective Enforcement

■ The Thirteenth Defense alleges that this proceeding was instituted against Fleetwood "selectively and for [an] improper motive." (D.I. 46 Ex. A at 8–9.) Fleetwood argues that this is a legally sufficient defense because:

the evidence at trial will show that because it is one of the largest manufacturers of mobile homes in the industry, and because it has taken innovative engineer-

---

*Midtec Paper Corp. v. United States,* 857 F.2d 1487, 1496 (D.C.Cir.1988); *see also Frozen Foods Express v. United States,* 351 U.S. 40, 43–45, 76 S.Ct. 569, 570–572, 100 L.Ed. 910 (1956) (Commissioner's narrow interpretations of statutory provision held "reviewable order."); *Ciba–Geigy Corp. v. E.P.A.,* 801 F.2d 430, 438 & n. 9 (D.C. Cir.1986); *Independent Bankers Ass'n of America v. Smith,* 534 F.2d 921, 929 (D.C.Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 166, 50 L.Ed.2d 141 (1976) ("[A]n agency's interpretation of its governing statute, with the expectation that regulated parties will conform to and rely on this interpretation, is final agency action fit for judicial review."); *National Automatic Laundry & Cleaning Council v. Shultz,* 443 F.2d 689, 698 (D.C.Cir.1971) ("The term 'agency action' embraces an agency's interpretation of its law"). *Cf. Natural Resources Defense Council, Inc. v. Thomas,* 845 F.2d 1088, 1094 (D.C.Cir.1988) (memorandum of subordinate agency employee found to be final agency action).

**21.** The standards forming the basis of Plaintiff's complaint were issued after notice to, and comments from, the industry in June of 1975 and became effective in March of 1976. The standards were published in the Federal Register and have not been changed by HUD since they were issued. 40 Fed.Reg. 26930 (June 25, 1975).

"The Federal Register provides a uniform system for making available to the public regulations and legal notices issued by Federal agencies." Fed.Reg. at II.

**22.** The interpretive bulletins were issued by HUD in January of 1977 and published in the Federal Register. 42 Fed.Reg. 960 *et seq.* (Jan. 4, 1977). 24 C.F.R. § 3280.1 provides that interpretive bulletins may be issued to announce a waiver to a particular manufacturer, *see* § 3280.1(b) or to "clarify the meaning of a standard or assist in the enforcement of a standard, *see* § 3280.1(c).

**23.** As noted *supra,* the language of the Eighth through the Twelfth Defenses tracks that contained in 5 U.S.C. § 706(2), the scope of review applied under § 5405(a)(1) of the Act. *Compare* the Eighth Defense [*and*] Ninth Defense [*and*] Tenth Defense [*and*] Eleventh Defense [*and*] Twelfth Defense *with* 5 U.S.C. § 706(2)(A), (C), (D), (E) and (F).

**24.** Having concluded that the Eighth through the Twelfth Defenses are legally insufficient, the Court need not consider Plaintiff's "prejudice" and "undue delay" arguments in opposition to this motion.

ing positions with which HUD has disagreed, Fleetwood has become an improper target of HUD's enforcement efforts. (D.I. 47 at 8.) In its reply brief, Fleetwood characterized its taking of "innovative engineering positions" with HUD as the exercise of "its constitutional and statutorily provided rights." (D.I. 51 at 20 n. 3.)[25]

While "selective enforcement" is recognized in appropriate circumstances as a defense to a criminal prosecution, *see Wayte v. United States*, 470 U.S. 598, 607–08, 105 S.Ct. 1524, 1530–31, 84 L.Ed.2d 547 (1985); *United States v. Batchelder*, 442 U.S. 114, 125 & n. 9, 99 S.Ct. 2198, 2205 & n. 9, 60 L.Ed.2d 755 (1979); *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962); *see also* Annotation, *What Constitutes Such Discriminatory Prosecution Or Enforcement Of Laws To Provide A Valid Defense In Federal Criminal Proceedings*, 45 A.L.R.Fed. 732 (1988), this Court is not convinced that "selective enforcement" is an equally applicable defense to a civil action to recover civil penalties by the Federal Government.[26]

The defense of selective enforcement is based on the unconstitutional selection of an individual for prosecution. *See Wayte*, 470 U.S. at 598, 105 S.Ct. at 1526. The constitutionality of a selection is judged by "ordinary equal protection standards." *Id.*[27] Conscious selectivity in the prosecution of criminal defendants is not itself unconstitutional, *see Oyler*, 368 U.S. at 456, 82 S.Ct. at 505, rather a selection is unconstitutional where it is "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification ... including the exercise of protected statutory and constitutional rights." *Wayte*, 470 U.S. at 598, 105 S.Ct. at 1526 (citations omitted). Selective enforcement is not a defense to the substantive criminal charge. *See United States v. Berrigan*, 482 F.2d 171, 174–75 (3d Cir.1973); *see also United States v. Washington*, 705 F.2d 489, 495 (D.C.Cir.1983); *United States Postal Service v. O'Brien*, 644 F.Supp. 140, 145 (D.D.C.1986); *United States v. Napper*, 553 F.Supp. 231, 232 (E.D.N.Y.1982). It is in the nature of an injunction to the

**25.** The characterization of its taking of "innovative engineering positions" with HUD as the exercise of a constitutional or protected right, as well as several other arguments or elaborations of arguments, appeared for the first time in Fleetwood's reply brief (D.I. 51 at 20 n. 3), although the legal sufficiency of the selective enforcement defense was raised in its opening brief. (D.I. 47 at 8.) Local Rule 3.2D.(2) provides that "[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and *fair* opening brief." (emphasis added.) This type of "sand-bagging" typically leads, as it did in this case, to added and unnecessary work for the Court.

**26.** This Court has found no case squarely addressing the question of whether or to what extent selective enforcement is an available defense to a civil action by the Federal Government, although it has found *United States v. Snepp*, 595 F.2d 926, 933 (4th Cir.1979), *rev'd in part on other grounds*, 444 U.S. 507, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980), wherein the Fourth Circuit questioned the extension of the defense to civil actions. Following oral argument at which the Court expressed skepticism regarding selective enforcement in the civil context, Fleetwood undertook to point out "several cases recognizing" application of the defense in the civil context. (D.I. 73 at 1–4, citing Attorney General of *United States v. Irish People, Inc.*, 684 F.2d 928 (D.C.Cir.1982), *cert. denied*, 459 U.S.

1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983); *LeClair v. Saunders*, 627 F.2d 606 (2d Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981); *United States v. Hughes*, 585 F.2d 284 (7th Cir.1978); *Atlantic & Gulf Stevedores*, 534 F.2d 541 at 546; and *Synanon Church v. United States*, 579 F.Supp. 967 (D.D.C.1984)). However, this Court is not convinced. First, none of the cases cited by Fleetwood resulted in the allowance of a defense to a civil action. Second, the case most strongly posited by Fleetwood, the *Irish People* case, is not as supportive of its position as Fleetwood suggests. In its effort to convince the Court, Fleetwood failed to point out that the Court there noted "[w]e need not reach the question of to what extent the selective prosecution defense may be inappropriate in a civil suit context, though we do hold that when the interests of the parties in the suit must be balanced, the civil or criminal nature of the case is important." *Irish People, Inc.*, 684 F.2d at 932 n. 8.

**27.** The Equal Protection Clause of the Fourteenth Amendment is not applicable to the Federal Government, although its protections are applicable through the Fifth Amendment. *See Wayte*, 470 U.S. at 608 n. 9, 105 S.Ct. at 1531 n. 9; *see also Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975).

criminal proceeding based on an unconstitutional selection of the defendant. *See Berrigan,* 482 F.2d at 175 (quoting *People v. Walker,* 14 N.Y.2d 901, 256 N.Y.S.2d 96, 99, 200 N.E.2d 779, 781 (N.Y.1964)).

This Court need not address the availability of selective enforcement as a defense where a selection has been deliberately based on race, religion or another suspect classification. Fleetwood argues that its defense in this case is predicated on the exercise of its "constitutional and statutorily provided rights." (D.I. 51 at 20 n. 3.)

Where the defense of selective enforcement is based on the exercise of a protected statutory or constitutional right, the unconstitutionality turns on the principle that "while an individual ... may be penalized for violating the law ... he may not be punished for exercising a protected statutory or constitutional right." *See United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982); *see also Bordenkircher v. Hayes.* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). While it may be that "[t]he imposition of punishment is the very purpose of virtually all criminal proceedings," *Goodwin,* 457 U.S. at 372, 102 S.Ct. at 2488, this Court is not convinced that a civil penalty action brought by the Federal Government is the punitive equivalent of a criminal action to the extent that selection of a civil defendant based on the exercise of protected rights is unconstitutional and a bar to the civil proceeding. *See United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980) ("The distinction between a civil penalty and a criminal penalty is of some constitutional import."); *see also Helvering v. Mitchell,* 303 U.S. 391, 402–04, 58 S.Ct. 630, 634–36, 82 L.Ed. 917 (1938); *United States v. Regan,* 232 U.S. 37, 48–50, 34 S.Ct. 213, 217–218, 58 L.Ed. 494 (1914). *Cf. Irish People, Inc.,* 684 F.2d at 932 n. 8 ("when the interests of the parties in the suit must be balanced, the civil or criminal nature of the case is important").

However, assuming, *arguendo,* that selective enforcement is an available defense to a civil penalty action it is not available in this case.

Selective enforcement consists of two distinct elements. *Government of The Virgin Islands v. Harrigan,* 791 F.2d 34, 36 (3d Cir.1986). There must have been selection in fact of a party from among other similarly situated violators. *See id.* And, as noted *supra,* selection must have been deliberately based on an impermissible standard. ·

Fleetwood's allegation of selective enforcement is legally insufficient for either one of several reasons. First, even if, as Fleetwood urges, the evidence at trial would show that Fleetwood was proceeded against here because it was "one of the largest manufacturers of mobile homes in the industry," (D.I. 47 at 8),[28] and because "it has taken innovative engineering positions with which HUD has disagreed," (*id.*) Fleetwood would not have established a cognizable claim. Fleetwood has neither a constitutional nor a statutorily protected right to take "innovative engineering positions" with HUD regarding its designs for the Act-regulated manufacture of mobile homes.

Second, Fleetwood's own argument establishes a permissible basis for selection of Fleetwood for this civil penalty proceeding. The purpose for the Act is to reduce injuries, deaths, insurance costs and property damage resulting from manufactured home accidents and to improve the quality and durability of manufactured homes by establishing national construction and safety standards. *See* 42 U.S.C. § 5401. Fleetwood states that it has taken "innovative engineering positions with which HUD disagreed." (D.I. 47 at 8.) This admitted disagreement with HUD regarding its compliance with the standards made Fleetwood a prime target for selection as an impediment to the implementation of national standards.[29] Enforcement of the Act for its expressed purposes does not infringe the exercise of constitutional rights. *See*

---

**28.** At oral argument, Fleetwood apparently abandoned as a ground for the defense that Fleetwood was one of the largest manufacturers in the industry. *See* Tr. at 24.

**29.** Whatever merit there may have been to Fleetwood's positions with which HUD disagreed, this disagreement nonetheless formed a proper basis for selecting Fleetwood for this

*Attorney General of the United States v. Irish People, Inc.*, 796 F.2d 520, 526 (D.C. Cir.1986). And, selection of those most vocal in their opposition to the law which they are accused of violating is not unconstitutional. *See United States v. Johnson*, 577 F.2d 1304, 1309 (5th Cir.1978); *see also Schehl v. Commissioner of Internal Revenue Service*, 855 F.2d 364, 367 (6th Cir. 1988); *United States v. Hoover*, 727 F.2d 387, 389 (5th Cir.1984). Rather it demonstrates that Plaintiff has a legitimate interest in proceeding against those it perceives to be the most vocal or strident violators of the law. *See Schehl*, 855 F.2d at 367; *Hoover*, 727 F.2d at 389–90; *Johnson*, 577 F.2d at 1309; *see also United States v. Christopher*, 700 F.2d 1253, 1258 (9th Cir.), *cert. denied*, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983) (Government permissibly selected defendants for prosecution where although the same substantive offense may have been committed by others defendants continued to trespass after warnings); *United States v. Whitty*, 688 F.Supp. 48, 55 (D.Me.1988) (although Government did not prosecute two other individuals who were accused by defendants of the same violation the record showed that only the defendants were identified in the initial report to the FBI and that the defendants' scheme involved more money than the other individuals').

Having concluded that Fleetwood's selective enforcement defense is legally insufficient, its motion for leave to amend will be denied with respect to the Thirteenth Defense as well.[30]

### III. FLEETWOOD'S MOTION TO ALLOW DISCOVERY DIRECTED TO THE SELECTIVE ENFORCEMENT DEFENSE

Fleetwood has moved for an order of this Court allowing it to proceed with discovery

directed to Plaintiff on the issue of the Thirteenth Defense. (D.I. 60.) As concluded in Section II *supra*, Fleetwood's motion for leave to add, *inter alia*, the Thirteenth Defense will be denied. Therefore, the Court concludes that the discovery requested in connection with the defense is not relevant to the subject matter involved in this action and does not appear reasonably calculated to lead to the discovery of evidence which would be admissible in this action. *See* Fed.R.Civ.P. 26(b)(1).[31]

Accordingly, Fleetwood's motion for an order allowing discovery directed to the Thirteenth Defense will be denied.

### IV. FLEETWOOD'S MOTION TO COMPEL DISCOVERY

Finally, Fleetwood has moved, pursuant to Rule 37, Fed.R.Civ.P., to compel Plaintiff to "respond completely" to its discovery requests. (D.I. 62.) The imprecision of Fleetwood's motion is only surpassed by the imprecision of Plaintiff's opposition to it. The Court was forced to decipher which discovery requests are the subject of Fleetwood's motion, and which of those discovery requests Plaintiff objects to, and on what grounds. Only then could the Court assess the merits of Plaintiff's objections. The Court's conclusions are set forth below.

In May and June of 1988 Fleetwood served a set of 38 requests for the production of documents and things and a set of 28 interrogatories on Plaintiff. (D.I. 63 at 2.) Of those, interrogatories 1–14, 16–17, 19, 21–24 and 26–28, and document requests 1–26 and 28–38 are the subject of Fleetwood's present motion to compel. (D.I. 63 at 4, 26–28.)

---

proceeding. *See Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944) (error in the administration of a statute, although a violation of the statute, is not without more a denial of equal protection of the laws).

**30.** Having concluded that the Thirteenth Defense is legally insufficient the Court need not address Plaintiff's "prejudice" and "undue delay" argument with respect to it.

**31.** Nor has Fleetwood shown a "colorable" basis which would entitle it to discovery under the standard applied to selective enforcement cases. *See United States v. Torquato*, 602 F.2d 564, 570 (3d Cir.), *cert. denied*, 444 U.S. 941, 100 S.Ct. 295, 62 L.Ed.2d 307 (1979); *United States v. Berrigan*, 482 F.2d 171, 177 (3d Cir.1973).

In opposition to Fleetwood's motion Plaintiff specifically addressed its objections to interrogatories 10–12, 17, 23 and 26. (D.I. 67 at 11–14.) Plaintiff objects, generally, to discovery requests that would require production of information submitted to HUD by other manufacturers under the Act. (*Id.* at 2–3.) The Court concludes that this general objection applies to document requests 11–13, 15–17 and 20, and interrogatory 14.[32] The Court will now turn to the merits of Plaintiff's objections in opposition to the present motion.

Plaintiff apparently does not object to responding to interrogatories 10–12. Rather Plaintiff argues that because of the large number of documents that must be reviewed to comply with Fleetwood's requests it will be unable to respond until February 1, 1989. (D.I. 67 at 11–12.) Fleetwood requests Plaintiff's responses by "a date certain," (D.I. 63 at 26), and did not contest the February 1, 1989, date in its reply to Plaintiff's argument. Therefore, the Court will grant the present motion to compel with respect to interrogatories 10–12, and will order Plaintiff to respond on or before February 1, 1989.

■ Interrogatory 17 asks:

If there have been any written or oral communications between HUD or [its agent] NCSBCS and state administrative agencies *relating to shearwall, uplift-anchorage, or chassis-joist connection design or enforcement,* please identify all persons involved in or who have knowledge of the communication, and state the substance of the communication.

(D.I. 63, Ex. 2 at 16) (emphasis added). Plaintiff objects to interrogatory 17 arguing that the discovery will be too burdensome because "HUD has thousands of documents" which constitute the requested discovery, and the documents "are not catalogued by subject matter." (D.I. 67 at 11–12.) Plaintiff also argues that the re-

quests are overbroad as they relate to construction components not at issue here. (*Id.*) Plaintiff's argument is apparently that the responses are not discoverable to the extent they deal with construction components not at issue in this case. Plaintiff has offered to produce all "communications" relating to the design deficiencies alleged in this case. (*Id.* at 13.) While the Court finds Plaintiff's "burdensome" argument to be unsupported, Plaintiff's responses with regard to construction components not at issue in this case would be irrelevant and not reasonably calculated to lead to admissible evidence in this case. *See* Fed.R.Civ.P. Rule 26(b)(1). Therefore, the Court will grant Fleetwood's motion to compel with respect to responses to interrogatory 17 insofar as they relate to components at issue in this case, and will direct Plaintiff to respond on or before February 1, 1989. The Court will deny Fleetwood's motion with respect to responses to interrogatory 17 insofar as they relate to components not at issue.

Interrogatory 23 asks:

If there have been *any written or oral communications* between ... [HUD] and any third parties or their counsel concerning investigations, administrative proceedings, or federal court litigation involving Fleetwood (or any of its subsidiaries), please identify the date and form of each communication, and state the substance of each communication.

(D.I. 63, Ex. 2 at 19) (emphasis added). Plaintiff claims that it has fully responded by notifying Fleetwood that the copies of discovery at issue were available for inspection, but that Fleetwood has not contacted Plaintiff's counsel in response thereto. (D.I. 67 at 13.) Fleetwood's motion will be granted with respect to interrogatory 23, and Plaintiff will be ordered to respond with respect to "written" *and* "oral communications" on or before Febru-

---

32. Document requests 11–13, 15–17 and 20, and interrogatory 14 are the subject of Plaintiff's motion for entry of a protective order on the grounds that the information is confidential or trade secret information submitted to HUD by other manufacturers. (D.I. 59.) The Court assumes, therefore, that the discovery requests which are the subject of Plaintiff's motion for entry of a protective order are the requests to which the present objection extends.

ary 1, 1989.[33]

Plaintiff's objection to interrogatory 26 is the same as its objection to interrogatories 10–12, that it will require until February 1, 1989, to respond fully to Plaintiff's requests. (*Id.* at 13–14.) Therefore, Fleetwood's motion to compel will be granted with respect to interrogatory 26, and Plaintiff will be ordered to respond on or before February 1, 1989.

■ Plaintiff's general objection relates to document requests 11–13, 15–17 and 20, and interrogatory 14. This objection is also embodied by Plaintiff's motion for entry of a protective order. (D.I. 64.)[34] Plaintiff argues that the information sought by Fleetwood includes proprietary and trade secret information of other manufacturers submitted to HUD under the Act which Plaintiff is required by the Act and the Uniform Trade Secrets Act to keep confidential. (D.I. 67 at 2–7; D.I. 59 at 6–11.)

Fleetwood states that these discovery requests "seek detailed information concerning other manufacturers' designs for the same components that are at issue in this proceeding, and information that reflects the government's evaluation of those designs." (D.I. 63 at 6; *see also id.* at 24–25.) Fleetwood argues that the discovery Plaintiff continues to withhold is critical to Fleetwood's "due care" defense in this action, (*id.* at 5; *see also* D.I. 71 at 6–8),[35] and that:

[t]he only possible way for this [C]ourt to evaluate Fleetwood's "due care" properly in the context of industry practice during the relevant time frame is to review information in possession of [P]laintiff that reflects exactly what the standard of care was in the industry during that time period.

(*Id.* at 6–7.)

The logic of Fleetwood's argument evades this Court. Fleetwood predicates its "due care" defense on § 5409(b)(2) of the Act. (*Id.* at 5.) Section 5409(b)(2) provides that the Act's prohibitions, contained in § 5409(a)(1), regarding noncompliance with the construction and safety standards "shall not apply to any person who establishes that he did not have reason to know

---

**33.** This Court does not appreciate being cast in the role of conduit for the interparty communications during discovery in this litigation.

**34.** The discovery requests which are the focus of Plaintiff's general objection are document requests 11–13, 15–17 and 20:

No. 11: All documents constituting, referring or relating to any design reviews conducted by HUD or NCSBCS [HUD's agent under the MHA] concerning the shearwall designs of other mobile home manufacturers.

No. 12: All documents constituting, referring or relating to any design reviews conducted by HUD or NCSBCS concerning the uplift-anchorage designs of other mobile home manufacturers.

No. 13: All documents constituting, referring or relating to any design reviews conducted by HUD or NCSBCS concerning the chassis-joist connection designs of other mobile home manufacturers.

No. 15: All documents constituting, referring or relating to any [performance review] of any DAPIA [design approval primary inspection agency] other than RADCO in which (a) shearwall, (b) anchorage-uplift designs or (c) chassis-joist connection designs of other manufacturers were addressed.

No. 16: All documents constituting, referring or relating to any internal memoranda within HUD, NCSBCS, or communications between HUD and NCSBCS, or any other persons, re-

lating in any respect to any [performance review] identified and produced in response to Requests No. 14 and 15, *supra.*

No. 17: All documents constituting, referring or relating to any investigation by HUD or NCSBCS of other manufacturers' shearwall, uplift-anchorage or chassis-joist designs.

No. 20: All documents constituting, referring or relating to any case or circumstances involving state administrative agencies wherein complaints were made regarding shearwall, uplift-anchorage, or chassis-joist connection related designs.

(D.I. 59 at 2–3.)

and interrogatory 14:

If there have been any investigations or reviews by HUD or NCSBCS of other manufacturers' shearwall designs, uplift-anchorage designs, or chassis-joist designs, please identify the dates of those investigations, identify the manufacturers, identify all persons involved or who have knowledge of in [sic] those investigations, and state the substance of each investigation.

(*Id.* at 3.)

**35.** Fleetwood also argues that the discovery is "essential" to the invalidity and selective enforcement defenses, which the Court has concluded in Section II.2 of this opinion will not be allowed. (D.I. 63 at 24.) Therefore it is unnecessary to address the need for discovery in connection with them.

[of the noncompliance] in the exercise of due care." *See* 42 U.S.C. § 5409(b)(2). Information relating to other manufacturers' designs and the Government's evaluation of those designs will shed no light on whether *Fleetwood* "had reason to know in the exercise of due care" that *its* products did not comply with the standards. To the extent Fleetwood argues that this information is necessary for it to establish "some industry or uniform standard of conduct," [36] the argument is similarly flawed. While the information may or may not reveal noncompliance with the standards by other manufacturers, the information will shed no light on the care exercised by the other manufacturers to discover their noncompliance. *See Fonesca v. Regan,* 734 F.2d 944, 950 (2d Cir.), *cert. denied,* 469 U.S. 882, 105 S.Ct. 249, 83 L.Ed.2d 186 (1984); *see also Texas & P.R. Co. v. Behymer,* 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905 (1903) (what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not). Therefore, the Court concludes that the information sought by document requests 11–13, 15–17 and 20, and interrogatory 14 is outside of the scope of discovery permitted under Rule 26(b)(1). Accordingly, this Court will not compel its discovery. *See Fonesca,* 734 F.2d at 948.

■ The Court reaches the same conclusion approaching the question on a somewhat different tack. It appears to this Court that the information Fleetwood seeks relating to the designs of other manufacturers is of the type that is typically proprietary or confidential.[37] Furthermore, Plaintiff undoubtedly is not the only source with access to the designs, or the information relating to them, Fleetwood seeks. Presumably, at least the other manufacturers are such a source. Therefore, balancing the interests at stake here, including those of the other manufacturers which have submitted information to HUD, this Court will exercise its discretion to limit Fleetwood's discovery and will refuse to compel its production. *See* Fed.R.Civ.P. 26(b)(1); *see also Empire of Carolina, Inc. v. Mackle,* 108 F.R.D. 323, 325–26 (S.D.Fla. 1985).

In accordance with the foregoing, Fleetwood's motion under Rule 37 to compel production of documents and responses to interrogatory requests will be granted with respect to interrogatories 10–12, 23, 26 and 17 insofar as interrogatory 17 relates to components at issue in this case. Fleetwood's motion to compel will be denied with respect to interrogatory 14, document requests 11–13, 15–17 and 20, and interrogatory 17 insofar as it relates to components not at issue in this case.

Plaintiff has not addressed its opposition to various discovery requests which are the subject of the present motion. Plaintiff is, therefore, deemed to have waived any objections to them. Accordingly, Fleetwood's motion will be granted with respect to interrogatories 1–9, 13, 16, 19, 21, 22, 24, 27 and 28, and document requests 1–10, 14, 18, 19, 21–26 and 28–38. Plaintiff will be ordered to comply with these requests on or before February 1, 1989.

## V. PLAINTIFF'S MOTION FOR ENTRY OF A PROTECTIVE ORDER

Plaintiff has moved for the entry of a protective order under Rule 26(c), Fed.R.

---

**36.** The Court expresses no opinion at this time as to whether the applicable standard of "due care" under § 5409(b)(2) is unique to the manufactured home industry.

**37.** The discovery sought by Fleetwood relates to the building designs of other manufacturers, and reviews thereof conducted by HUD or its agents. *See* note 34 *supra.* Although the other manufacturers are not present to support the proprietary nature of their designs, this Court presumes that construction designs of a commercial manufacturer of products set forth in the designs are proprietary to the manufacturer. Furthermore, if the manufacturers will not furnish Fleetwood with the designs, it is not unrea-

sonable to conclude that the manufacturers would claim here that they are confidential. The Act itself contemplates the submission and protection of confidential information. *See, e.g.,* 42 U.S.C. § 5413(c)(5) and (h). In fact Fleetwood sought and obtained a protective order to prevent Plaintiff from disclosing information it submitted to HUD under the Act, arguing that disclosure "could seriously jeopardize Fleetwood's competitive position." (D.I. 34 at 8–9.) Fleetwood cannot be heard to argue that the submissions of other manufacturers to HUD deserve any less protection from disclosure to their competitors than do Fleetwood's.

Civ.P., covering discovery requests which are also the subject of Fleetwood's motion to compel. (D.I. 64; *see also* Tr. at 3.) In view of the Court's conclusion to deny Fleetwood's motion to compel with respect to the subject matter of the present motion, *see* Section IV of this opinion *supra,* the Court finds it unnecessary to consider the present motion, as it will have no practical effect on the existing controversy. Accordingly, Plaintiff's motion for entry of a protective order will be denied.

## VI.  CONCLUSION

The Eighth through Thirteenth Defenses proposed by Fleetwood's motion for leave to amend are legally insufficient. Therefore, amendment would be futile. Accordingly, Fleetwood's motion for leave to amend will be denied, and its motion to proceed with discovery in connection with the Thirteenth Defense will be denied.

Fleetwood's motion to compel discovery will be granted in part and will be denied in part. Plaintiff's motion for entry of a protective order is rendered moot by the Court's disposition of the motion to compel, and will, therefore, be denied.

An order will be entered in accordance with the foregoing.